No. 12,466.

CLARK ET AL *v.* MACHETTE.
(21 P. [2d] 182)

Decided April 3, 1933. Rehearing denied April 24, 1933.

Mr. Thomas H. Gibson, Mr. George Hetherington, Mr. Harry C. Riddle, Mr. James D. Parriott, Mr. Frederick P. Cranston, Mr. B. O. Wheeler, for plaintiffs in error.

Mr. W. Penn Collins, Mr. Guy D. Duncan, for defendant in error.

*En Banc.*

Mr. Justice Campbell delivered the opinion of the court.

This action by Margaret Machette as plaintiff against Michael Clark, et al., defendants, went to trial upon the plaintiff's second amended complaint, the material alle-

gations of which are denied in the joint and several answer of the defendants. Trial to a jury resulted in three separate verdicts. In one verdict the issues were found for the defendants, Collins, Jaffa, P. N. Clayton and Lena Clayton. The second verdict found the issues for the plaintiff and assessed damages at $2,500 against the defendants Michael Clark, Mrs. Michael Clark, Albert Norton, Emma Norton, Ray S. Johnson, N. T. Henderson, Harold B. Oakes, Mrs. Harold B. Oakes, and Sam Goldhammer. The third and separate interrogatory verdict answered the following questions: "Q. In committing the tort complained of, were any of the defendants guilty of malice? A. Yes. Q. If so, who? A. Michael Clark, Mrs. Michael Clark, Albert Norton, Emma Norton, Ray S. Johnson, N. T. Henderson, Harold B. Oakes, Mrs. Harold B. Oakes." After the court had denied the motions for new trial by each of the defendants against whom a verdict was returned, judgment was entered in favor of Collins, Jaffa and the two Claytons for costs; against the other defendants named judgment was rendered for $2,500 and the court fixed the time of incarceration as to the defendants found guilty of malice at three months in the county jail unless the judgment was sooner paid. Appropriate exceptions were saved to the entry of the respective judgments and the defendants against whom such verdicts were rendered are here with their joint writ of error asking for a reversal.

It is doubtful if an exact precedent can be found in the books for just such a case as this record discloses. The jury's verdict in favor of Collins, Jaffa and the two Claytons was right and the judgment of dismissal as to them will stand. Cross-errors assigned thereto are not well taken. Neither the abstract of the record, as prepared by counsel for plaintiffs in error, nor the separate abstract prepared by counsel for defendant in error, nor both combined, give an adequate or complete record of what took place at the trial below, and for such failure we might summarily dispose of this writ of error

by an affirmance of the judgment in its entirety. The same result, however, has been reached as the result of a reading of the testimony preserved in the transcript and the briefs of the respective parties. In the instructions of the court to the jury the nature of the controversy is thus set forth: In what is denominated a first cause of action it is alleged that plaintiff is a widow who owned a two-story dwelling house situate on South Lincoln street in the city of Denver. She lived in this house and rented rooms therein to lodgers. In September, 1922, the defendants made an unlawful and wrongful search of her house and premises and the furnishings therein belonging to herself and tenants for the purpose of annoying, humiliating, disturbing, intimidating and injuring the plaintiff, and depriving her of her property and driving away her tenants, and by reason thereof plaintiff's health has been greatly and irreparably injured and she suffered great injury to her person and reputation and to her property and was brought into disgrace and disrepute among those who knew her, and her peace of mind was greatly disturbed, permanently impaired and destroyed, and as the result of such unlawful trespass upon her and her premises she suffered, and during the remainder of her life will suffer, great mental anguish and physical pain and these injuries thus committed by the defendants were attended by circumstances of malice, fraud, insult, and reckless and wanton disregard of her rights and feelings.

In what plaintiff calls a second cause of action she alleges that in November, 1922, these defendants made an unlawful and wrongful search of her premises and her belongings and the belongings of her tenants for the purpose of annoying, humiliating and intimidating plaintiff and depriving her of her property and the use thereof and for the purpose of driving away her tenants and thereby causing them to leave her premises and cease renting them of her, and to leave her house completely vacated, except for herself.

The third cause of action alleges that during the year

1922 and until the month of March, 1925, the defendants, by acts of malicious mischief, annoyed, disturbed and abused plaintiff and used vile names toward her whenever she appeared on any part of her premises, and induced and encouraged children to throw stones through the windows and doors of her house, and to do great damage to her premises, and caused to be thrown into the windows of her house filth and dirt gathered for that purpose.

The fourth cause of action alleges that in June, 1924, these defendants unlawfully and maliciously assaulted the plaintiff, knocked her down, kicked, beat, maimed and ill treated her until she was bruised and bleeding, and that while she was in such injured condition and was prostrate and unable to defend herself, defendants turned upon her a hose and thoroughly drenched her with cold water, and that when she succeeded in freeing herself from this attack and attempted to cross the alley at the rear of her premises to get assistance, the defendants again met her and knocked her down, kicked, bruised and beat her, and that when she called for the police, a member of the police force in that vicinity responded and instead of receiving aid from him as requested, on the contrary, the defendants, at least two of whom were members of the police force of the City and County of Denver, in furtherance of the conspiracy to that end, again assaulted her by forcibly placing her under arrest and lodging her thereafter in the city jail, and later in the Denver General Hospital, and in her weakened, bruised, maimed and bleeding condition, with wet clothes on, prevented her from obtaining medical attention for four days, and refused to give her any medical attention, and by reason of such improper treatment plaintiff became chilled, sick and sore, and suffered great bodily pain and mental anguish and permanent physical ailments which still exist and will require medical and surgical treatment for relief, and probably cannot be healed or cured at all.

The fifth cause of action alleges that these defendants

conspired with malicious intent to injure the plaintiff, and while she was suffering from the assault and battery as inflicted by the defendants as alleged in the fourth cause of action, they placed her under arrest, deprived her of her liberty, took her to the city jail and there confined and imprisoned her in a bruised, maimed, bleeding, weakened and wet condition, from the assault and battery committed by the defendants, and without medical aid or attention, and without permitting her to secure dry clothing for a period of four days, and as a result of such false imprisonment, refused to give her medical aid, care or treatment, and prevented her from seeing or talking with her friends or attorney.

The sixth cause of action alleges that in June, 1924, these defendants, by Ray S. Johnson representing them, without any probable cause or reason for doing so, filed a complaint in the county court of the City and County of Denver, charging plaintiff with insanity, and caused a warrant to issue on such charge, known by the defendants to be false; and that they caused plaintiff to be transferred from the city jail to the insane ward of the Denver County Hospital and to be unlawfully confined therein without any hearing or trial, all of which was done with full knowledge that the charge of insanity was false and with malicious intent to injure the plaintiff, and that such insanity proceedings thereupon were thereafter dismissed by the county court for failure to prosecute.

The seventh cause of action alleges that in June, 1924, the defendants, after causing the false and malicious arrest and throwing of plaintiff into the city jail, without probable cause or reason, and while she was still confined there, proceeded to the plaintiff's house, searched the same and made an unlawful search of the premises, took possession of her keys that they found there and removed, or caused to be removed, from her house the sum of $235 in cash and $800 worth of personal property and belongings of the plaintiff consisting of clothing, rugs, ornaments, keepsakes, valuable papers and other

household furnishings and goods, and that she was thus robbed and deprived of her property, and defendants have since retained and withheld the same and the belongings from her.

In the eighth cause of action plaintiff alleges that the defendants conspired and designed, without reasonable or probable cause, maliciously and falsely, to charge plaintiff with insanity, with a malicious and wilful intent thus to injure her and wrongfully confined and imprisoned her with wilful intention of injuring her and placed her in a cell in the Denver General Hospital and compelled plaintiff to use a cot or bed that was covered with blood, and refused to give plaintiff any cool drinking water, and caused her to drink lukewarm water, thereby nauseating her and causing her to vomit, and all of said acts were done to give credence to the charge which defendants made that plaintiff was deranged and disordered in her brain, the defendants at the time knowing that plaintiff was not insane, committed these acts, nevertheless, with studied intent to derange and unbalance plaintiff's mind or to cause her death, and defendants are still continuing to circulate reports that plaintiff is insane, for the purpose of continuing the injury to her and her reputation, and to prevent her from securing tenants to occupy her said premises.

 Notwithstanding the fact that the plaintiff in her second amended complaint has set forth her grievances against the defendants in the form of eight separate and distinct causes of action, in reality and in legal effect she has pleaded but one cause of action against them which is an unlawful conspiracy entered into and executed by the defendants to drive plaintiff from her home because she refused to join with them in the bootlegging enterprises, and in other unlawful acts, in which at the time they were engaged. And the eight supposed separate causes of action are not separate causes of action in reality, but separate statements of eight separate acts committed at different times by which the alleged conspiracy was executed. This distinction, if the par-

ties were aware of it, was not called by them to the attention of the trial court, which proceeded to state to the jury what the plaintiff designated as eight different causes of action, but a reading of these instructions discloses that the court required the jury to return its verdict or verdicts as though but one cause of action was pleaded, although the same was set forth in eight different counts in the complaint. In the light of this preliminary statement we proceed to a consideration of the errors assigned to the judgment as entered by the court.

■ At the close of the evidence Judge Hetherington, one of the defendants' attorneys, requested the trial court to direct a verdict in favor of some of the defendants, designating them by name, not all of them, on the ground of insufficient evidence against them, which motion the court denied. Thereupon Judge Riddle, another of the attorneys for the defendants, moved for a directed verdict as to other designated defendants, which motion was also denied, and in this connection counsel further said that the testimony is conflicting as to some of these other defendants, nine of them, who are the plaintiffs in error here, and I presume the motion of dismissal does not properly apply as to them. We call attention to this statement of counsel chiefly for the reason that since the evidence, in so far as it concerns the plaintiffs in error, is in direct conflict, and since the jury found the issues in favor of the plaintiff with respect thereto, it cannot be interfered with or set aside upon the ground of insufficiency. Our reading of the evidence, and the entire testimony as contained in the transcript has been read by the writer of the opinion, satisfies us, though there is a conflict therein, that the decided weight of the testimony is unquestionably against the plaintiffs in error. The only grounds alleged for a reversal that have any semblance of merit are those which concern alleged erroneous rulings of the trial court upon other questions, which we now proceed to consider.

■ 1. Plaintiffs in error contend that the acts which the plaintiff testifies they committed, beginning

sometime during the year 1922, are barred by our perti-
nent statute of limitations; that some of the acts, if com-
mitted at all, took place more than three years, and some
more than one year, before this action was begun and are
barred by our pertinent statute of limitations. This
contention of the defendants we think is unfounded. The
court below found, and we think rightfully, that neither
the three year, nor the one year, provision is applicable
to the facts as disclosed by the evidence. But if there
is any doubt about this contention it disappears when
we consider that the complaint states but one cause of
action, an executed conspiracy which resulted in injury
to the plaintiff. It is entirely clear that the plaintiff's
cause of action, as set forth in her complaint and as es-
tablished by the evidence is not barred by any pertinent
provisions of our statute of limitations.

2. While the plaintiff was testifying as to the
alleged acts of cruelty that were inflicted upon her by the
defendants, there was some demonstration in the court
room, whereupon the court administered a rebuke and
said: "Now, we will have no demonstration in the back
part of the court room from anybody. You are welcome
to sit here as witnesses or litigants or spectators and
listen to the testimony. We will have no more demon-
strations, or you will have to sit out in the hall if you
are here on business. Otherwise, you will be ejected
from the court room. We will not have any comment or
demonstrations at all." Counsel for plaintiffs in error
say this demonstration by the spectators in the court
room was highly prejudicial to the defendants and of
itself is ground for a reversal of the judgment, and in
support of this contention cite *Grant v. Varney,* 21 Colo.
329; *Perry v. People,* 63 Colo. 60, and other Colorado
cases. Just what this demonstration consisted of the
record does not disclose. The only reference to the same
that we have found in the record is the statement of the
court which we have reproduced. The defendants asked
for no further instruction, nor did they make any sug-

gestion to the court at the time that its remarks were insufficient to remove any unfavorable effect upon defendants of this demonstration. We do not believe the jury was at all affected by it, whatever it may have been.

3. There is no merit in the argument of the plaintiffs in error that the verdict of the jury, awarding compensation to the plaintiff for $2,500 against them is excessive. It might well have been for a much larger sum considering the nature of the cruel acts which the jury found that these plaintiffs in error committed.

4. As to one of the plaintiffs in error, Sam Goldhammer, a physician and a member of the staff of physicians at the Denver General Hospital, we are inclined to the view that this judgment should be reversed in so far as it affects him. That there was an unlawful conspiracy entered into to drive this woman from her home, we entertain no doubt whatever; that all of the plaintiffs in error, except Goldhammer and the four who were acquitted, were parties to this conspiracy and contributed to the carrying out of the same. Goldhammer had no connection with, and did not participate in, any of these overt acts of the other plaintiffs in error to which we have alluded. His only connection with the case is that, being on the medical staff of the Denver General Hospital, he wrote a letter in which he said that he had made an examination of the plaintiff after she was brought from the city jail to the county hospital and that she was insane. The fact is that he made no examination of the plaintiff to ascertain her condition at that, or any other, time and his letter to the contrary is unquestionably untrue, and at the trial below he did not give any satisfactory reason for writing it. It was upon the strength of this letter of Goldhammer, as bearing upon the plaintiff's sanity, that an affidavit was made by defendant Ray S. Johnson and filed in the county court, alleging that she was an insane person that the county court caused an investigation to be made thereof which resulted in a dismissal of the proceeding, since neither Johnson nor any-

one else representing him appeared at the time set for the hearing upon this charge. Goldhammer might, or might not, be held liable individually for his participation in the institution of the insanity proceedings, but we are inclined to the view that, since he had no connection whatever with the illegal conspiracy acts of the other defendants, of which they were found guilty, the judgment under review should be, and it is, set aside as to him.

Defendant Ray S. Johnson, who seems to have been a member of the Denver police patrol and who was active in this conspiracy in which he and the other plaintiffs in error participated, was not present at the trial of this action, having gone to the state of California, although he seems to have been served with a summons and his name appears as one of the defendants in the action both below and a plaintiff in error upon this review.

We have carefully considered all of the evidence in this case. A great outrage was perpetrated upon this plaintiff. The jury was too lenient, in our judgment, as to the amount of the verdict against the plaintiffs in error. It made no mistake, however, in finding them guilty of the charges preferred against them. As already stated, it is almost inconceivable that, in a civilized community, such an outrage occurred. The jury found the facts against plaintiffs in error and the trial court upheld its findings. The judgment, therefore, against all of the plaintiffs in error, except Sam Goldhammer, is affirmed, and as to him it is set aside. The cross-errors assigned by plaintiff to the verdict and judgment in favor of Collins, Jaffa and the two Claytons are overruled and judgment of dismissal as to them is affirmed.