**J. F. WHITE ENGINEERING CORPO-RATION, Joseph F. White, Sr., Orcelia K. White, and Joseph F. White, Jr., Appellants,**

v.

**GENERAL INSURANCE COMPANY OF AMERICA, Appellee.**

**GENERAL INSURANCE COMPANY OF AMERICA, Cross-Appellant,**

v.

**J. F. WHITE ENGINEERING CORPO-RATION, Joseph F. White, Sr., Orcelia K. White, and Joseph F. White, Jr., Cross-Appellees.**

Nos. 7743, 7744.

United States Court of Appeals Tenth Circuit.

Sept. 10, 1965.

William R. Young, Denver, Colo., for appellants and cross-appellees.

John R. Hickisch, Denver Colo. (H. Gayle Weller and W. Robert Ward, Denver, Colo., on brief), for appellee and cross-appellant.

Before MURRAH, Chief Judge, and PICKETT and SETH, Circuit Judges.

MURRAH, Chief Judge.

This diversity action was brought by the appellee-bonding company to recover its losses as surety on performance bonds written for the appellant-White Corporation on two construction contracts, one with the Kennecott Copper Corporation and the other with the Air Force Department. The appeal is from judgment on jury verdicts for the appellee on four of the six claims of the complaint. The other two claims were not submitted to the jury and are not involved here.

The first claim stated the execution of a conventional indemnity agreement by which White Corporation agreed to indemnify appellee for all losses sustained by it on bonds written for the corporation on the Kennecott contract. It then stated that by reason of the corporation's default on the construction contract, the appellee had been or would be required to pay a total of $142,000 which it is entitled to recover from the corporation under the indemnity contract. The next or fourth claim submitted to the jury sounded in fraud. It sought relief against Joseph White as director and officer of the corporation for furnishing false balance sheets to the appellee purporting to represent the assets of the corporation as an inducement for the surety bonds on the Kennecott project. His wife, Orcelia White, was joined in this claim as director and secretary of the corporation for negligently allowing her husband to furnish the balance sheets. The claim was for damages of $95,399.70 for debts paid under the bonds, $4,675.22 for accrued expenses, and other additional expenses which would be incurred in the adjustment of unpaid claims.

The fifth claim like the fourth sounded in fraud and sought the same relief against Joseph White only based on the same false balance sheets. It further alleged that White and his Certified Public Accountant conspired to fabricate and submit the balance sheets to induce the appellee to execute the performance bonds on the Kennecott project. As the Court properly told the jury, these claims were "overlapping", and the alleged conspiracy added nothing to the weight of the claim, but only stated it a "little bit differently".

The sixth and last claim stated that the corporation, Joseph White, Orcelia

White and their son, Joseph White, Jr., executed a general indemnity agreement with the appellee in 1950, and that in consideration and reliance thereon the appellee executed a performance bond for the Air Force Construction Contract. It further stated that judgment had been rendered in favor of the Pittsburg Plate Glass Company for money owed it by the corporation for work on the project; and that appellants are consequently liable to appellee for payment of this judgment.

Appellants do not deny the execution of the indemnity agreement or their liability thereon for the losses. They do specifically plead failure of the duty to mitigate the losses.

As to the fourth and fifth claims, appellant Joseph White specifically denied the alleged fraud and conspiracy. He asserted that the financial reports were prepared by one Norman Nevins, an independent contractor, C.P.A., and that he, White, was in no way responsible for the errors or omissions, if any, in these statements. As a further defense, he denied that the bonding company relied upon the financial statements; that reliance, if any, for the execution of the bonds was on a previous course of dealings between the principal and surety. The defendant-appellant also pleaded the Colorado three year statute of limitations on relief for fraud after discovery. See 87-1-9, Colo.Rev.Stat., 1963.

As to the sixth claim, all appellants took the position that the claim which ripened into a judgment could have been settled for $2,200, and that the corporation should, therefore, be liable for only that sum.

The trial court directed a verdict for Orcelia White on the fourth claim and appellee has cross-appealed. The jury returned a verdict for the full amount claimed on the first count, and for reasons not material here the Court reduced the verdict and gave judgment thereon. The jury returned a verdict for $137,000 against Joseph White on claims four and five and for the full amount on claim six, i. e. $2,931.81.

On the issue of mitigation in the first claim, Joseph White testified that when he was forced to discontinue work on the Kennecott project because " * * * we ran out of money here * * *", he requested appellee to finance the completion of the project claiming that the remaining funds due under the contract were sufficient to complete the job. He estimated it would cost only about $40,-000. He testified that the bonding company demanded personal indemnity from Mrs. White and him with the contract funds in a joint bank account " * * * so both of us could sign"; but that he and his wife were already personally obligated and did not have sufficient liquid assets.

There was proof to the effect that after consideration of all factors, the bonding company declined to utilize White's organization and equipment to complete the job. The remainder of the work was recontracted and completed at a cost of $141,765. The jury was told that while the bonding company was not required to permit the contractor to complete the contract, if it believed that in the exercise of reasonable diligence and precaution the contractor and his organization should have been employed to complete the project, the jury should reduce or deny recovery in the amount which it believed could have been saved by so doing. This instruction is undoubtedly a correct statement of the law on the issue. See Lynch v. Call, 10 Cir., 261 F.2d 130, and authorities cited. Appellants say that it was unreasonable as a matter of law for the bonding company not to finance appellants and permit them to finish the job. But, the issue of reasonableness in circumstances like these is usually for the trier of the facts. See Valley Development Co. v. Weeks, 147 Colo. 591, 364 P.2d 730. Under the proof here the trial court was clearly right and properly submitted the issue to the jury.

Appellants complain of the qualifications of a witness to testify concerning

the cost of completion of the project as it related to the duty to mitigate. The witness was an engineer whose qualifications for the testimony he gave were clearly for the trial court and the weight of his testimony for the jury.

On the issue of fraudulent preparation and submission of balance sheets in claims four and five, the evidence is that between 1950 and 1959 the corporation periodically furnished these balance sheets and other financial information to appellee. They were certified by the corporation and by the Certified Public Accountant and were also furnished to Dun and Bradstreet who in turn furnished them to the bonding company. In brief and substance they showed an increase in the corporation's net worth from $204,125.25 to $716,792.93. Although at the time of the trial the corporate books prior to January 1, 1959, were unavailable, the federal income tax returns admitted into evidence showed a decrease in the corporation's net worth for the same years from $115,813.38 to a deficit of $53,606.47. The 1956 balance sheet listed as an asset certain industrial real estate with a value of $145,000 which was increased in subsequent financial statements to $164,000. Nevins testified he had been told by White that the corporation owned the property. On trial of the case it was stated for the record that appellants admitted the property had always belonged to Joseph and Orcelia White as individuals. There was further testimony that in 1958 the bonding company was informed by White that the corporation had purchased a large ranch.

In early 1960 the appellee requested a current financial statement. There was testimony that both White and Nevins told the appellee that the corporation's next statement would be available shortly and would show the corporation in better financial condition than the previous statement of November, 1958. In June and before submitting the financial statement the performance bonds for the Kennecott project were executed and the corporation executed the indemnity agreement sued upon. The financial statement included the industrial property and the ranch with a value of $228,196.20 or a total net worth of $678,866.70. There was evidence that shortly after acquisition of the ranch in 1958 it was declared as a dividend in the amount of $28,000 and conveyed to Joseph White and Orcelia White as individuals.

On the issue of fraud and fraudulent representation as set out in the fourth and fifth claims, the trial court instructed the jury in meticulous detail. In essence the jury was told that before it could find that the balance sheets induced the bonding company to write the bonds, the jury must first find that they were made as a fact, not an opinion; that they were knowingly false or made with a reckless indifference to their truth or falsity with the intention that they be acted upon; and that in reliance upon their truth they were acted upon to the bonding company's detriment. These are indeed the essential elements of actionable fraud applicable in this case. See Morrison v. Goodspeed, 100 Colo. 470, 68 P.2d 458, 71 P.2d 154; Nichoalds v. McGlothin, 10 Cir., 330 F.2d 454. There was direct and positive evidence from which the jury could infer that the balance sheets were knowingly false, that they were made to induce the execution of the bonds and that the bonding company acted in reliance upon the representations to its detriment. The issue was properly submitted to the jury.

On the question of Joseph White's liability for the preparation of the balance sheets by his Certified Public Accountant, the jury was told that if it found from the evidence that the C.P.A. was an independent contractor and made misstatements in the balance sheets of the corporation unknown to White and to which he had not consented, he should not be held liable therefor. But, if the jury found he did know of the contents, the fact that the C.P.A. was an independent contractor was immaterial.

Appellants complain of refusal of the Court to give their requested instructions on the issues of fraud, fraudulent

representations and reliance and the independent contractor theory. It is sufficient to say that the trial court's instructions correctly stated the law of the case, and the refusal by the Court to give the instructions as requested, even if correct, was not error.

■■ Finally, appellants complain of the admission of evidence of fraud occurring more than three years prior to the date of suit. They rely upon the universal rule applicable in Colorado to the effect that parties who rely upon fraud and upon failure to discover it in order to avoid the bar must allege and prove not only when the fraud was discovered but the facts and circumstances under which it was obtained. See Fox v. Lipe, 14 Colo.App. 258, 59 P. 850. It is true, of course, that White could not be liable for fraudulent acts discovered over three years from the date on which the action was begun. But, as the trial court observed, the Statute of Limitations goes to the cause of action and not to the evidence in support of it. The statute does not bar the admission of evidence of continuing representations as in this case. See Clark v. Machette, 92 Colo. 365, 21 P.2d 182; Caplin v. United Feature Syndicate, D.C., 8 F.R.D. 424.

### CROSS-APPEAL

The bonding company has appealed from the dismissal of the fourth claim as to Orcelia K. White. It contends the evidence was sufficient to go to the jury on the issue of her negligent failure to protest the submission of the false balance sheets or to inform the bonding company of their falsity.

It is noteworthy that Mrs. White is not charged with the fraud of her husband, but with negligent failure to act when it was her duty to do so. The appellant invokes the statutory law of Nebraska where the White Corporation was organized which makes assenting officers or directors liable for loss and damages resulting from "any written statement or report of the condition or business of the corporation that is false in any material respect". See § 21–181, Rev.Stat.Neb., 1943. The theory seems to be that Orcelia White either knew or by the exercise of due care should have known of the falsity of the balance sheets, and by failing to protest or inform assented to and sanctioned their submission to the bonding company. Apart from the statutory law, it is the general rule that directors are liable for false representations made by and on behalf of a corporation which they approve or sanction. See Fletcher Cyclopedia Corporation's Permanent Edition, Vol. 3, Pages 752, 754. Colorado law seems to require active or joint participation. See Holland v. American Founders Life Ins. Co., 151 Colo. 69, 376 P.2d 162.

■ The evidence is that Mrs. White was an officer and director of the company. She was also a working secretary during the period in which the balance sheets were prepared and furnished and the bonds issued. But, the evidence is uncontradicted to the effect that she was a nominal director and a ministerial employee. It is not suggested that she is charged with constructive notice of the falsity of the balance sheets by virtue or her corporate office, nor is it suggested that the duties of her office served to acquaint her with the knowledge of their falsity. There was evidence that she had knowledge of the preparation of the balance sheets and that she may have mechanically placed them in envelopes to be mailed. But, there is no evidence whatsoever that she actually knew they were false or that the matter had ever been discussed with her or in her presence. This being true, she could not have actively participated in the fraud, hence owed no duty to the bonding company.

Judgment is affirmed.