No. 19,582:

ROBERT E. HOLLAND *v.* THE AMERICAN FOUNDERS LIFE INSURANCE COMPANY OF DENVER.
(376 P. [2d] 162)

Decided November 5, 1962.

Mr. NORTON FRICKEY, for plaintiff in error.

Messrs. YEGGE, HALL and SHULENBURG, for defendant in error.

*In Department.*

Opinion by MR. CHIEF JUSTICE DAY.

THIS is a companion case to No. 19,581 announced this date. Though jointly involved in one case in the trial court, each defendant asserting different defenses appears in this Court by separate writ of error.

In the trial court plaintiff, The American Founders Life Insurance Company of Denver, Colorado, obtained judgment against defendant Robert E. Holland jointly and severally with Thomas K. Hudson for $37,400.00 and costs. We are here concerned solely with Holland's writ of error and shall refer to the parties as they appeared in the trial court or by name.

Plaintiff's claim against Hudson and Holland is based upon identical allegations of breach of fiduciary relationship to the corporation as officers and directors thereof. However, the duties and obligations of the two defendants were not the same as to the offices they held, and much of the evidence as to Hudson's participation does not apply to Holland nor can Hudson's acts be imputed to him. Thus, without detailing the transaction involved—which is explained in the Hudson case—we discuss the record as it applies to Holland.

Holland's main point of error is directed to the court's failure to grant his motion to dismiss at the close of all the evidence. Therefore, the basic question for determination is whether the record establishes Holland's acts or conduct in relation to the issuance of American Founders Life stock in exchange for stock of Texas Adams Oil Company was in law a breach of his fiduciary duties and obligations to the plaintiff corporation.

Our answer to this question is in the negative.

The evidence discloses that prior to February 9, 1956, Hudson discussed the possible exchange of stock with Clarence W. Button, who testified that he discussed the proposed trade *solely* and *only* with Hudson. On February 9, 1956, Holland went to the office of Colorado Management Corporation for the purpose of signing some stock certificates of plaintiff corporation. Forrest C. Roan, J. R. Holt, the principal officers and also directors of Colorado Management Corporation, and one other director of the Management Corporation, were present during such discussions as thereafter took place. Holland testified that he believed the occasion to be a special or "rump" meeting of the board of Colorado Management Corporation. At that time and place Hudson first asked Holland if he had any objection to the issuance of more than 5,000 shares of plaintiff's stock to Button. Holland stated that he had no such objection. The record does not indicate to what extent, if any, Hudson, in the presence of Holland, discussed or explained the details of the proposed transaction with Button. However, Hudson did ask Holland if he had any objection to the proposed exchange of stock. Holland said that he would have no objection if it were first determined that there was a market for the Texas Adams stock, if that stock were sold, and if plaintiff corporation received $1.60 per share for any stock issued in exchange for the Texas Adams stock.

After Holland left the offices of Colorado Management Corporation, Hudson called E. V. Holland, a director of plaintiff corporation, and asked if he had any objection to the issuance of more than 5,000 shares to Button, and if he had any objection to an exchange of plaintiff's stock for Texas Adams stock. E. V. Holland advised Hudson that he would have no objection to the transaction if it was first determined that there was a market for the Texas Adams stock, that said stock be

sold, and that plaintiff corporation receive $1.60 per share before issuance of its stock to Button.

Thereafter, on February 15, 1956, without further consultation with, advice or authority from the board of directors of plaintiff corporation, Hudson completed a transaction with Button whereby Button was to receive 15,000 shares of plaintiff's stock in exchange for 37,500 shares of the stock of Texas Adams Oil Company.

Button signed the regular printed subscription agreement used in all other stock transactions of plaintiff corporation and Colorado Management Corporation providing for payment of $30,000.00 in cash. However, this subscription agreement was modified or altered in handwriting to indicate that 37,500 shares of Texas Adams stock was received in full payment for plaintiff's stock. The said handwritten modification was signed by J. R. Holt and "F.C.R." — admittedly Forrest C. Roan. Holland did not see this subscription agreement at the time of the transaction, or at any time thereafter prior to March 12, 1956.

The record is not contradicted that on or about March 1, 1956, Hudson, without knowledge, consent or authority of the board of directors of plaintiff corporation, completed a transaction with Alice Loveland for the exchange of 9,000 shares of plaintiff's stock for 21,250 shares of Texas Adams Oil Company stock. Alice Loveland signed a regular stock subscription agreeing to pay $2.00 per share for 9,000 shares of the stock of plaintiff corporation. As in the Button transaction, this subscription agreement was modified in handwriting to indicate that payment in full was made by 21,250 shares of Texas Adams Oil Company stock, the subscription agreement being initialed "F.C.R." — admittedly Forrest C. Roan. Holland did not see the Loveland subscription agreement prior to March 12, 1956, and the record further establishes that Holland had no detailed or exact knowledge of the Loveland transaction prior to the completion thereof by Hudson or that he participated

in said transaction in any manner whatsoever. It was not even discussed in the "rump" session of the Management Company at the time of the Button transaction.

The record does establish that Holland, in the performance of his duty as secretary of plaintiff corporation, signed his name and affixed the corporate seal on the three 5,000 share certificates issued in the name of Button, and on the 5,000 share certificate issued in the name of Alice Loveland, and on the 4,000 share certificate issued in the name of Charlotte M. Brown, a sister of Alice Loveland. The Button certificates bear the date of February 15, 1956; the Loveland and Brown certificates are dated March 1, 1956. All five certificates were signed by Hudson prior to their presentation to Holland for his signature and the affixing of the corporate seal. The record does not establish the exact date when Holland signed these certificates. Holland's testimony that he probably signed them some time after the completion of both transactions is not contradicted. The record also indicates that, in the ordinary course of the corporate business, Holland signed more than 900 stock certificates of plaintiff corporation. His duties in attesting to the president's signature and to the seal was ministerial only.

Holland testified that he had no knowledge that the 24,000 shares of plaintiff's stock represented by the five subject certificates were issued in exchange for Texas Adams stock until March 12, 1956. On said date the majority of the directors of the insurance company met to determine the agenda for the annual stockholders meeting to be held the following day. At said meeting Hudson presented the so-called "balance sheet" reflecting the assets, liabilities and capital of the insurance company as of March 10, 1956. One of the items appearing on said balance sheet is "Stock owned $47,600.00." Hudson testified that he explained that the stock owned was 58,750 shares of Texas Adams Oil Company stock. The record indicates that such discussion of this item as

may have occurred at the agenda meeting was not detailed or specific. Three of the directors in attendance at said meeting stated that they did not recall any discussion or explanation whatsoever that the stock owned was Texas Adams Oil Company stock. The only formal action taken by the board of directors of plaintiff corporation at this meeting was approval of the agenda for the stockholders meeting.

On March 13, 1956, Holland and all but two of the other eight directors of plaintiff corporation were present. The balance sheet of March 10, 1956, was distributed to all persons attending the meeting. Hudson testified that the "stock owned" item was discussed and explained at this meeting — at least to the extent that the stock owned was capital stock of Texas Adams Oil Company. At least two of the directors testified that they did not recall any such discussion or explanation. Three stockholders also testified that they did not recall any specific discussion of Texas Adams Oil Company capital stock. But whatever discussion occurred was laid at rest by Hudson's avowal in the minutes of January 17, 1957, wherein was recorded his statement that he alone was responsible for the exchange of plaintiff's stock for Texas Adams Oil Company stock plus his further statement that none of the other officers or directors of the corporation could be blamed for the transactions or any loss incurred as a result thereof, and that he was assuming the full responsibility therefor.

A reading of the record in the light of Holland's part in the transaction does not establish he connived, collaborated or participated with Hudson in effecting the exchange of plaintiff's stock for the stock of Texas Adams Oil Company, Inc., or that his acts and conduct with relation to the Texas Adams transaction were willful or fraudulent. On the other hand, it shows merely that Holland routinely attested to the signature and seal on a million shares of stock, and as secretary had no duty to do anything else until such time as the company

began issuing policies and collecting premiums. Holland's performance of his duties as secretary and his conduct as a director was not a contributing cause of the loss sustained by the corporation in the Texas Adams transaction.

"Directors are not liable for the wrongful acts of their codirectors if they do not connive at them and if ordinary care on their part would not have averted the loss; nor are the executive officers responsible for the neglect of duty, negligence, or misconduct of each other in their official relations without proof of joint participation. * * * " 13 Am. Jur., Corps. 946, §994.

"They are liable jointly and severally for losses of the corporation caused by their bad faith or willful and intentional departures from duty, their fraudulent breaches of trust, their gross or willful negligence, or their ultra vires acts. * * * " 19 C.J.S. Corps. 114, §764.

A director and officer of a business corporation is liable for his own misconduct and not for the wrongful conduct of other directors or officers unless he joined with them in perpetrating the wrong. The directors of a business corporation other than a bank are not to be held responsible for mere errors of judgment or for want of prudence short of clear and gross negligence. *Allied Freightways, Inc., v. Cholfin, et al.,* 325 Mass. 630, 91 N.E. (2d) 765.

The judgment of the trial court against Holland is reversed and the cause remanded with directions to dismiss the action against defendant Holland.

MR. JUSTICE FRANTZ and MR. JUSTICE MCWILLIAMS concur.