**RESOLUTION TRUST CORPORATION,**
**Plaintiff,**

**v.**

**Frank C. HESS, William Hinchman, James Needham, and Steven E. Clyde and Betha J. Clyde, as Executors of the Estate of Edward W. Clyde, Defendants.**

**Civ. No. 92–C–141G.**

United States District Court,
D. Utah, C.D.

April 16, 1993.

---

Jathan W. Janove, Salt Lake City, UT, and Denis F. Shanagher, San Francisco, CA, for plaintiff.

Dale A. Danneman, Phoenix, AZ, John D. Gordan, New York City, and James S. Jardine, Salt Lake City, UT, for defendants.

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

This matter came before the court on defendants' Motion to Dismiss, or in the alternative to Strike Allegations of the Complaint and for a More Definite Statement. Plaintiff Resolution Trust Corporation ("RTC") was represented by Jathan W. Janove and Denis F. Shanagher. Defendants were represented by Dale A. Danneman, John D. Gordan, and James S. Jardine. The parties filed extensive memoranda, after which the court heard oral argument and took the matter under advisement. Now being fully advised, the court renders its Memorandum Decision and Order.

## FACTUAL BACKGROUND

Resolution Trust Corporation ("RTC") brought this action under state and federal law for negligence, breach of fiduciary duty, and negligence per se against former directors of the now defunct American Savings and Loan Association ("American Savings"), headquartered in Salt Lake City, Utah. Plaintiff RTC alleges that defendants proximately caused damages in excess of $80 million by failing properly to supervise American Savings' lending practices. More particularly, RTC alleges that defendants failed to investigate potential borrowers, failed to institute a reasonable and adequate loan policy, failed to institute sufficient changes in response to regulatory criticism, and failed to restrict lending to a certain geographic area. RTC does not allege gross negligence, self-dealing, or bad faith.

American Savings converted to a federal charter in 1987. The relevant conduct in this action occurred before 1987 while American Savings was a Utah chartered institution. On February 17, 1989, the Federal Home Loan Bank Board ("FHLBB") declared American Savings insolvent, and appointed the Federal Savings and Loan Insurance Corporation ("FSLIC") as conservator. In June, 1990, pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–73, 103 Stat. 183 (codified as amended in scattered sections of 12 U.S.C.), the FHLBB was replaced by the Office of Thrift Supervision ("OTS"). Pursuant to Title V of FIRREA, the OTS appointed RTC as receiver of American Savings. As receiver, RTC took possession of all of American Savings' assets and liabilities, and succeeded to the rights and privileges of the shareholders, depositors, and creditors pursuant to 12 U.S.C. §§ 1441a(b)(4) and 1821(d)(2)(A).

Defendants filed this Motion to Dismiss contending that RTC has failed to state a claim upon which relief can be granted. In the alternative, defendants move for a more definite statement. After considerable re-

view, the court grants defendants' motion to dismiss in part, and denies it in part.

## ANALYSIS

When ruling on a motion to dismiss, the court presumes that the allegations in the plaintiff's complaint are true. *Jackson v. Integra, Inc.,* 952 F.2d 1260, 1261 (10th Cir. 1991). The complaint will not be dismissed unless it appears that the plaintiff cannot prove facts entitling it to relief. *Id.; Curtis Ambulance of Florida, Inc. v. Board of County Comm'rs,* 811 F.2d 1371, 1375 (10th Cir.1987) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974)).

## I. WHETHER STATE LAW CLAIMS MAY BE ASSERTED AGAINST DIRECTORS OF STATE CHARTERED, FEDERALLY INSURED SAVINGS AND LOAN INSTITUTIONS WHICH LATER CONVERT TO A FEDERAL CHARTER.

RTC's claims for negligence and breach of fiduciary duty are brought under Utah law. Defendants argue that because American Savings became a federally chartered institution in 1987, state law is inapplicable to this case.

### A. *State Claims Against Directors of Federally Chartered Institutions.*

The Supreme Court has recognized that Congress "delegated to the [OTS] broad authority to establish and regulate 'a uniform system of [savings and loan] institutions where there are not any now' and to 'establish them with the force of a national charter.'" *Fidelity Fed. Sav. and Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 166, 102 S.Ct. 3014, 3029, 73 L.Ed.2d 664 (1982) (citations omitted). In so doing, "Congress plainly envisioned that federal savings and loans would be governed by what the [OTS]—not any particular State—deemed to be the 'best practices.'" *Id.* at 162, 102 S.Ct. at 3027 (citing 12 U.S.C. § 1464(a)); *Downriver Community Fed. Credit Union v. Penn Square Bank,* 879 F.2d 754, 758 (10th Cir. 1989), *cert. denied,* 493 U.S. 1070, 110 S.Ct. 1112, 107 L.Ed.2d 1019 (1990).

In keeping with this broad regulatory mandate, the OTS has been given the "plenary and exclusive authority ... to regulate all aspects of the operations of Federal savings associations...." 12 C.F.R. § 545.2 (1992). When that authority is exercised, it is "preemptive of any state law purporting to address the subject of the operations of a federal savings association." *Id.* Manifestly, the OTS has a right to preempt conflicting state law. Such a conflict arises (1) "when compliance with both federal and state regulations is a physical impossibility," *de la Cuesta,* 458 U.S. at 153, 102 S.Ct. at 3022 (quoting *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–43, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963)), or (2) when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (quoting *Hines v. Davidowitz,* 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581

■ Federal savings and loan institutions are federally chartered, federally regulated, federally insured, and federally organized. Such comprehensive coverage leaves little or no room for state law claims. *Resolution Trust Corp. v. Gallagher,* 1992 WL 315218 at \* 2–3 (N.D.Ill. Oct. 23, 1992); *Federal Sav. and Loan Ins. Corp. v. Olano,* 1989 WL 54226 at \* 1, 1989 U.S.Dist. LEXIS 5469 at \* 1 (E.D.La. May 17, 1989). Allowing state law to govern the actions of directors of federal savings and loan associations would result in different and conflicting standards of conduct in the different states, thus impeding Congress' goal of treating such institutions in a uniform manner. For these reasons, it is apparent that as a general rule federal law exclusively governs the internal affairs of federal savings and loan associations, including director liability. However, this determination does not necessarily determine the matter of applicable law in the case of state chartered, federally-insured associations.

### B. *State Claims Against Directors of State Chartered Institutions Converted to Federally Chartered Institutions.*

■ American Savings was originally a state chartered institution, but converted to a

federal charter in 1987. All of the conduct alleged in the complaint occurred while American Savings still operated under its state charter. Defendants argue, however, that federal law should be RTC's exclusive remedy regardless of when American Savings converted to a federal charter.

The Northern District of Illinois, in *Federal Deposit Ins. Corp. v. Miller*, 781 F.Supp. 1271 (N.D.Ill.1991), faced this same question. The court in *Miller* held that since state law applied to the directors during the period in which the allegedly negligent conduct took place, state law was applicable to those actions even though the savings and loan institution later converted to a federal charter. *Id.* at 1276. This court agrees.

In the case at bar, Utah law governed defendants' conduct during the period alleged in the complaint. Defendants should not be able to avoid liability for past acts by simply adopting a federal charter. Hence, for purposes of this action during the relevant time period, American Savings will be treated as a state chartered, federally-insured savings and loan association. Accordingly, for the period prior to its acquisition of a federal charter, RTC may pursue claims against American Savings as provided by Utah law unless such are preempted under federal law.

II. WHETHER FEDERAL LAW (FIRREA) PREEMPTS STATE LAW OR FEDERAL COMMON LAW CLAIMS BASED UPON ORDINARY NEGLIGENCE

■ In this action, RTC has only alleged ordinary negligence. Defendants contend that § 212(k) of FIRREA, 12 U.S.C. § 1821(k), preempts state law as well as federal common law and establishes a minimum federal liability standard of gross negligence. In this regard, 12 U.S.C. § 1821(k) provides:

A director or officer of an insured depository institution *may* be held personally liable for monetary damages in any civil action by, on behalf of, or at the request or direction of the .Corporation ... for *gross negligence,* including any similar conduct or conduct that demonstrates a greater disregard of a duty of care (than gross negligence) including intentional tortious conduct, as such terms are defined and determined under applicable state law. *Nothing in this paragraph shall impair or affect any right of the Corporation under other applicable law.* (Emphasis added.)

In *Federal Deposit Ins. Corp. v. Canfield,* 967 F.2d 443 (10th Cir.), *cert. dismissed,* —— U.S. ——, 113 S.Ct. 516, 121 L.Ed.2d 527 (1992), the Tenth Circuit held that § 1821(k) does not preempt state laws which permit an action against directors based upon simple negligence.[1] The court in *Canfield* soundly rejected the argument that the purpose of § 1821(k) was to place a limitation on officer and director liability:

"May" is a permissive term, and it does not imply a limitation on the standards of director and officer liability. FIRREA enables the FDIC to stand in the shoes of the failed bank and its stockholders and to sue the officers and directors for mismanagement under state law. In this context, no reasonable construction of 'may' results in an absolute limitation of the liability of officers and directors to instances of gross negligence....

. . . .

Nowhere does the statute announce its intention to create a national standard of liability, and the vehemence of the assertions to the contrary made by defendants will not persuade us to interpret the statute in light of a fiction.

*Canfield,* 967 F.2d at 446–47 (citations omitted).

■ Defendants argue in the alternative that even if § 1821(k) does not preempt state law, the same rule should not be applied to

---

1. The Tenth Circuit in *Canfield* made it clear, however, that an action based upon gross negligence under § 1821(k) would lie even if state law purported to limit civil liability of directors to intentional misconduct:

    [E]ven where state law under which the FDIC is authorized to bring suit otherwise limits

actions against officers and director's to *intentional* misconduct, an officer or director may nevertheless be held liable for gross negligence.

*Id.* at 446.

federal common law. In this regard, defendants maintain that Congress, through § 1821(k), spoke on the matter of director liability, and eliminated the need to resort to federal common law to establish a standard of care, citing *Federal Deposit Ins. Corp. v. Bank of Boulder*, 911 F.2d 1466, 1474 (10th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1103, 113 L.Ed.2d 213 (1991), wherein the court said that "resort to federal common law is only necessary where Congress has not plainly spoken to the matter under consideration".[2] However, the *Canfield* court placed particular emphasis on the savings clause of § 1821(k) which reads: "Nothing in this paragraph shall impair or affect any right of the Corporation under other applicable law." 12 U.S.C. § 1821(k). The court's analysis of this clause lends support to the conclusion that § 1821(k) does not preempt *any state* or *federal* law permitting civil actions based on ordinary negligence:

> [W]e believe that "other applicable law" means *all* "other applicable law." Under the statute then, any other law providing that an officer or director may be held liable for simple negligence survives; such a law would be an "other applicable law," and construing the statute to bar its application would "impair" the FDIC's rights under it.

*Id.* (citations omitted). In support of this statement, the Tenth Circuit cited to the Supreme Court case of *Patterson v. Shumate*, —— U.S. ——, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), in which the court interpreted the phrase "applicable nonbankruptcy law" to include both state and federal law. The *Canfield* court explained, "This [*Patterson*] principle applies with equal force here." 967 F.2d at 446 n. 4. In all events, this court considers that it would be unreasonable to read the term "may" as "permissive" when

applied to state law, but as a limitation on liability when applied to federal law. The Tenth Circuit's ruling does not lend itself to such an interpretation.

Based upon *Canfield*, this court concludes that § 1821(k) does not set a minimum federal liability standard of gross negligence, and that it does not preempt applicable state law or federal common law.

## III. WHETHER UTAH STATE CLAIMS BASED UPON ORDINARY NEGLIGENCE CREATE DIRECTOR LIABILITY

### A. *Negligent Mismanagement*

■ RTC's first claim is for negligent mismanagement. Utah's approach to director liability for negligence is set forth in *FMA Acceptance Co. v. Leatherby Ins. Co.*, 594 P.2d 1332 (Utah 1979). In *FMA Acceptance*, the Supreme Court of Utah reaffirmed its holding in *Warren v. Robison*, 19 Utah 289, 57 P. 287 (1899), that under Utah law, "directors and officers may be personally liable for negligence in the management of corporate affairs." 594 P.2d at 1334. The court explained:

> The rule most in harmony with the character and well-being of such an institution appears to be that the directors, in administering its affairs, must exercise ordinary care, skill, and diligence. Under this rule, it is necessary for them to give the business under their care such attention as an ordinarily discreet business man would give to his own concerns under similar circumstances, and it is therefore incumbent upon them to devote so much of their time to their trust as is necessary to familiarize them with the business of the insti-

---

2. Several federal courts have agreed with defendants' reasoning. *Resolution Trust Corp. v. Miramon*, 1992 WL 373635, 1992 U.S.Dist. LEXIS 18813 (E.D.La. December 9, 1992); *Resolution Trust Corp. v. Gallagher*, 1992 WL 315218 (N.D.Ill. Oct. 23, 1992); *Federal Deposit Ins. Corp. v. Barham*, 794 F.Supp. 187 (W.D.La. 1991); *Federal Deposit Ins. Corp. v. Majalis*, 1991 U.S.Dist. LEXIS 20539 (W.D.La.1991); *Federal Deposit Ins. Corp. v. Miller*, 781 F.Supp. 1271, 1276 (N.D.Ill.1991). These courts based their

holdings on two arguments. First, that Congress, through § 1821(k), spoke on the subject and eliminated the need for federal common law. *Bank of Boulder*, 911 F.2d at 1474. Second, that reading § 1821(k) as preserving federal common law leaves the statute devoid of any meaning. *Mountain States Tel. and Tel. Co. v. Pueblo of Santa Ana*, 472 U.S. 237, 249, 105 S.Ct. 2587, 2594, 86 L.Ed.2d 168 (1985) ("a statute should be interpreted so as not to render one part inoperative") (citation omitted).

tution, and to supervise and direct its operations.

*Id.* (quoting *Warren v. Robison,* 57 P. at 291) (emphasis omitted).[3] It appears that on and after the effective date of legislation adopted by the Utah Legislature in its 1993 General Session, director liability by statute will be limited to "gross negligence, willful misconduct or intentional infliction of harm on the corporation or its shareholders."[4] The statute has no retroactive effect, however [5], and does not supplant the preexisting applicable standard of director liability for ordinary negligence.[6]

### B. *Breach of Fiduciary Duty*

RTC's second cause of action is for breach of fiduciary duty. RTC does not allege bad faith or self-dealing in connection with these claims.

Defendants present two arguments with regard to the fiduciary duty claim. First, that a claim for breach of fiduciary duty requires a showing of bad faith or self-dealing, not mere negligence. Second, that if simple negligence is sufficient to support a breach of fiduciary duty claim, the fiduciary duty claim is simply a restatement of RTC's claim for negligent mismanagement, and, thus, not separately actionable.

3. Defendants cite two older Utah cases for the proposition that the courts will not interfere with corporate affairs in the absence of director bad faith or gross negligence. *Chapman v. Troy Laundry Co.,* 87 Utah 15, 47 P.2d 1054 (1935), *Skeen v. Warren Irrigation Co.,* 42 Utah 602, 132 P. 1162 (1913). This proposition is directly at odds with and subsumed by the Utah Supreme Court's statement in *FMA Acceptance* that directors may be personally liable for negligence in management of corporate affairs.

4. H.B. 137, amending Utah Code Ann. § 16–10a–840. (Effective May 3, 1993).

5. Section 68–3–3 Utah Code Ann. provides, "No part of these revised statutes is retroactive, unless expressly so declared." An exception to the rule exists when the statute is merely procedural and does not affect or change a vested right. *Smith v. Cook,* 803 P.2d 788, 792 (Utah 1990). In this case, the statute does not purport to be retroactive, and it does affect vested rights.

6. The following statement of "legislative intent" is found in the Utah Senate Journal: "The intent and purpose of this legislation is to clarify and

### 1. *Scope of Fiduciary Duty to Exercise Ordinary Care*

As a general principle of corporate law, a director's fiduciary duty consists of two parts: a duty of loyalty, and a duty of care.[7] *Norlin Corp. v. Rooney, Pace, Inc.,* 744 F.2d 255, 264 (2d Cir.1984) (applying New York law); *Smith v. Van Gorkom,* 488 A.2d 858, 872–73 (Del.1985); 10 Am.Jur.2d, *Banks* § 178; Lewis D. Solomon & Alan R. Palmiter, *Corporations: Examples and Explanations,* § 20.2 (1990); Edward Brodsky & M. Patricia Adamski, *Law of Corporate Officers and Directors,* § 1:03 (1984); Harry G. Henn & John R. Alexander, *Laws of Corporations* §§ 231–32 (3rd ed. 1983); Gilson, *supra* note 1, at 854–55.

Utah clearly recognizes the duty of loyalty. It requires a director, among other things, to act in good faith and in the best interests of the corporation, and prohibits directors from engaging in self-dealing. *Nicholson v. Evans,* 642 P.2d 727, 730 (Utah 1982). Because RTC does not allege bad faith or self dealing, there exists no issue as to the breach of defendants' duty of loyalty.

Utah also recognizes the fiduciary duty of care. Under § 7–7–3.1 of the Utah Savings and Loan Associations Act ("Savings and Loan Associations Act"), associations are permitted to limit a director's liability for

codify what is considered to be the existing common law of this state, as interpreted by judicial decision, that the standard of care for establishing corporate directors' and officers' personal liability has been and is gross negligence." 1993 Utah Senate Journal 764 (Wednesday, March 3, 1993). This court considers this to be an incorrect statement of Utah law prior to enactment of the statute, and is inconsistent with the *FMA Acceptance* case.

7. Federal courts look to the law of the state in defining a director's fiduciary duty. *Burks v. Lasker,* 441 U.S. 471, 478, 99 S.Ct. 1831, 1837, 60 L.Ed.2d 404 (1979). In some states, a director's fiduciary duty does not include a duty of care. For example, in *Federal Sav. and Loan Ins. Corp. v. Shelton,* 789 F.Supp. 1360 (M.D.La. 1992) the court determined that under Louisiana law, a director's fiduciary duty only included a duty of good faith and loyalty, not care. *Id.* at 1366 ("When assessing a breach of fiduciary duty under Louisiana law, the requirement is good faith and loyalty.").

breach of his or her "fiduciary duty." [8] However, the director's fiduciary duty of loyalty and the requirement of good faith may not be eliminated or limited. In this court's view, the statute implicitly recognizes the existence of the duty of care in Utah. Accordingly, this court opines that the Supreme Court of Utah would recognize the duty of care as part of a director's fiduciary duty.[9]

Under the breach of fiduciary duty claim, in essence, RTC alleges that defendants breached their duty of care. Breach of the duty of care under Utah law as related to director liability is set forth in *FMA Acceptance:*

> [D]irectors, in administering [corporate] affairs, must exercise ordinary care, skill, and diligence. Under this rule, it is necessary for them to give the business under their care such attention as an ordinary discreet business man would give to his own concerns under similar circumstances....

594 P.2d at 1334; *see also* Henn & Alexander, *supra*, at § 232 (defining a director's duty of care with language similar to that used in *FMA Acceptance*). The standard set forth is one of ordinary care. Hence, defendants' argument that such a claim requires a showing of bad faith or self dealing is not supportable.

### 2. *Similarity of the Claims of Fiduciary Duty of Care and Negligent Mismanagement*

■ Defendants second argument is that RTC's claims for negligent mismanagement and breach of fiduciary duty of care are so similar that they are not separately actionable.

In Utah, the fiduciary duty of care is simply the level of care state law requires a director to exercise in managing corporate affairs. That is the identical standard of ordinary negligence which underlies a claim for negligent mismanagement. Accordingly, it is this court's judgment that under Utah law, a claim for breach of a director's fiduciary duty of care is tantamount to a claim of negligent mismanagement. *See Smith v. Van Gorkom*, 488 A.2d 858, 872–73 (Del.1985) (treating a claim for breach of fiduciary duty of care under Delaware law the same as a negligence claim).

Allowing RTC to continue with both claims would unduly prejudice defendants and would be duplicative. Accordingly, RTC's claim for breach of the fiduciary duty of care is dismissed in favor of an action based upon ordinary negligence as recognized by the Utah Supreme Court in *FMA Acceptance.*[10]

### C. *The Business Judgment Rule*

■ Defendants point out that many courts have been reluctant to make hindsight judgments about corporate affairs and therefore have provided directors with broad discretion in making good faith decisions. This common law principle, known as the business judgment rule, creates a presumption that the directors acted in good faith and in accor-

---

**8.** Utah Code Ann. § 7–7–3.1 provides

(1) The articles of incorporation may include a provision eliminating or limiting the personal liability of a director to the association ... *for breach of fiduciary duty,* but the provision may not eliminate or limit the liability of a director:

    (a) for any *breach of the director's duty of loyalty* to the association....

    (b) for acts or omissions *not in good faith* or which involve intentional misconduct or a knowing violation of law.

Utah Code Ann. § 7–7–3.1 (1988) (emphasis added).

**9.** An identical director liability statute in Delaware "enables a corporation ... to eliminate or limit personal liability of members of its board of directors or governing body for violations of a

director's fiduciary duty of care." Legislative Synopsis for Del.Code Ann. tit. 8, § 102(b)(7) (1992).

**10.** RTC cites *FDIC v. McSweeney*, 772 F.Supp. 1154 (S.D.Cal.1991), *aff'd*, 976 F.2d 532 (9th Cir.1992), for the proposition that a breach of the fiduciary duty of care and negligence constitute separate actions. In *McSweeney*, the court was not faced with both a claim for negligent mismanagement and a claim for breach of the fiduciary duty of care. Only the fiduciary duty claim was at issue. The court determined that a claim for breach of fiduciary duty was governed by California's four-year "catch-all" statute of limitations, and not by the statute of limitation governing ordinary, non-corporate negligence claims.

dance with sound business principles.[11] In the *FMA Acceptance* case, the Utah Supreme Court reaffirmed its prior decision in *Warren* in which the business judgment rule was articulated:

> If, however, directors, acting in good faith, and with reasonable care, skill, and diligence, nevertheless fall into a mistake, either of law or fact, they will not be held liable for the consequences of their actions.

*FMA Acceptance*, 594 P.2d at 1334 (quoting *Warren*, 57 P. at 291) (emphasis omitted). This statement indicates that the business judgment rule protects directors from liability for good faith errors only after the directors have exercised reasonable care in fulfilling their corporate obligations.[12] This comports with *Hoye v. Meek*, 795 F.2d 893 (10th Cir.1986), wherein the Tenth Circuit applied an Oklahoma statute which embodied a simple negligence standard to director liability. The court stated:

> In *Financial Industrial Fund v. McDonnell Douglas*, 474 F.2d 514, 518 (10th Cir. 1973), we recognized that the business judgment rule shields a director from liability in the case of an honest error in judgment. But in order to come within the ambit of the business judgment rule, a director must be diligent and careful in performing the duties he has undertaken....
>
> Assuming appellant's good faith, that alone was not sufficient to shield him from liability.... The Oklahoma statute requires good faith *and* the diligence, care and skill of a prudent man.

*Id.* at 896. The holding in *Hoye* is applicable to this case since, prior to recently enacted legislation [13], Utah, like Oklahoma, applied an ordinary negligence standard to liability of corporate directors. This interpretation of the business judgment rule finds further support in Fletcher's treatise on corporations:

It has been said that the so-called "business judgment rule" does not conflict with the concept of negligence. In other words, when courts say that they will not interfere in matters of business judgment, it is presupposed that judgment—reasonable diligence—has in fact been exercised.

3A William M. Fletcher, *Cyclopedia of the Law of Private Corporations*, § 1040 (1986).

Based upon the foregoing, this court rules that during the time period applicable to this case, Utah law permitted claims against corporate directors for negligent conduct. This court also rules that Utah law reserves application of the business judgment rule to instances in which reasonable care has been exercised. Defendants' argument to the contrary is therefore rejected.

## IV. WHETHER FEDERAL COMMON LAW PROVIDES FOR DIRECTOR LIABILITY BASED UPON NEGLIGENCE OR NEGLIGENCE PER SE

RTC's negligence per se claim is brought under federal common law, and is based on the allegation that defendants violated FHLBB Memorandum R41b and 12 C.F.R. § 563.170, promulgated under the Home Owners' Loan Act ("HOLA"), 12 U.S.C. § 1461, *et seq.* Defendants claim that federal common law on director liability is preempted by FIRREA, 12 U.S.C. § 1821(k); and further that even if federal common law is not preempted by FIRREA, RTC's claim fails because federal common law does not provide RTC with an action against defendants for negligent mismanagement.

Since as we have determined that FIRREA does not preempt federal common law, the next issue is whether federal law allows RTC to maintain a claim for negligence or negligence per se based upon viola-

---

**11.** *See* James D. Gilson, Note, *Utah's Statute Permitting Limits on Corporate Director's Liability: A Guide for Lawyers and Directors,* 1988 Utah L.Rev. 847, 858–59 (1988) (discussing the Utah negligence standard and the role of the business judgment rule); Ward Wagstaff, Recent Developments, 1988 Utah L.Rev. 265, 266, 269–70 (1988) (same).

**12.** However, the Business Judgment Rule has been applied to limit director liability to gross negligence in at least one jurisdiction. *Holland v. American Founders Life Ins. Co.,* 151 Colo. 69, 376 P.2d 162, 166 (1962) (directors of non-banking business corporation not responsible for errors of judgment short of clear and gross negligence).

**13.** *See supra* note 4.

tions of HOLA regulations.[14] This court joins other federal courts [15] in concluding that HOLA itself does not provide an express or implied private right of action for damages against directors of failed savings and loan associations.[16] However, the lack of a private right of action under HOLA does not necessarily preclude the possibility of using HOLA regulations as a standard of care in a federal common law claim for negligence per se. *But see Sanford Street Local Dev. v. Textron, Inc.*, 768 F.Supp. 1218, 1224 (W.D.Mich.1991) (denying a claim for negligence per se because Toxic Substances Control Act provided no private remedy), *vacated on other grounds*, 805 F.Supp. 29 (W.D.Mich.1991). There is a distinct difference between bringing a private cause of action derived from the HOLA regulations themselves, and using those same regulations as a standard of care where the underlying cause of action is based on separate statutory or common law. *Pratico v. Portland Terminal Co.*, 783 F.2d 255, 264–65 (1st Cir.1985); *Dixon v. International Harvester Co.*, 754 F.2d 573, 581 (5th Cir.1985).

HOLA regulations may be used as a standard of care in a claim for negligence per se if two requirements are met. First, a separate underlying cause of action for negligent mismanagement must exist under federal common law. Second, if the first require-

ment is met, the HOLA regulations establishing the standard of care must satisfy the traditional elements of negligence per se.

## A. Federal Common Law Claim Against Directors of Federally Chartered Institutions For Negligence

It is well established that there is no longer a "federal general common law." *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). Since *Erie*, courts may apply federal common law only in a "few and restricted" instances. *Wheeldin v. Wheeler*, 373 U.S. 647, 651, 83 S.Ct. 1441, 1445, 10 L.Ed.2d 605 (1963). Those instances "fall into essentially two categories: those in which a federal rule of decision is 'necessary to protect uniquely federal interests,' and those in which Congress has given the courts the power to develop substantive law." *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640, 101 S.Ct. 2061, 2067, 68 L.Ed.2d 500 (1981) (citation omitted).

There is nothing to suggest that Congress in enacting HOLA intended to confer upon the courts the power to make substantive law. Hence, whether federal common law should be applied in this case depends upon the presence of "uniquely federal interests." In making this determination, this court is mindful of the rule that before applying fed-

---

**14.** RTC could not maintain the same negligence per se claim under Utah law. In Utah, violation of a statute may support a claim of negligence per se only in cases involving dangerous instrumentalities. *Hall v. Warren*, 632 P.2d 848, 850 (Utah 1981).

**15.** *See Federal Sav. and Loan Ins. Corp. v. Capozzi*, 855 F.2d 1319, 1325 (8th Cir.1988) *vacated on other grounds*, 490 U.S. 1062, 109 S.Ct. 2058, 104 L.Ed.2d 624 (1989); *Federal Sav. and Loan Ins. Corp. v. Olano*, 1989 WL 54226 at *1, 1989 U.S.Dist. LEXIS 5469 at *3 (E.D.La. May 17, 1989); *Eureka Fed. Sav. and Loan Ass'n v. Kidwell*, 672 F.Supp. 436 (N.D.Cal.1987); *First Hawaiian Bank v. Alexander*, 558 F.Supp. 1128, 1130–31 (D.Haw.1983).

**16.** In *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Supreme Court set forth relevant factors in determining whether a federal statute creates an implied private right of action: (1) whether the statute was created for the "especial" benefit of the plaintiff's class; (2) whether there is implicit or explicit legislative intent to create such a remedy; (3) whether the implica-

tion of a private remedy is consistent with the purpose of the statute; and (4) whether the cause of action is in an area traditionally relegated to state law such that it would be inappropriate to infer a cause of action based solely on federal law. *Id.* at 78, 95 S.Ct. at 2087.

The Supreme Court later explained that the main focus of the inquiry must be whether Congress intended to create such a remedy. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). In *Transamerica Mortgage Advisors v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979), the Supreme Court applied the *Touche Ross* approach to an action brought under the Investment Advisers Act of 1940. 15 U.S.C. § 80b–1. The Court placed special emphasis on the enforcement provisions of the Act. It determined that since Congress had included certain enforcement provisions without mention of a private right of action, it was "highly improbable" that Congress's failure to so mention a private right of action was due to simple absentmindedness. *Id.* at 20, 100 S.Ct. at 247. (citation omitted).

eral common law, there must exist "a significant conflict between some federal policy or interest and the use of state law." *Wallis v. Pan Am. Petroleum Corp.*, 384 U.S. 63, 68, 86 S.Ct. 1301, 1304, 16 L.Ed.2d 369 (1966); *Federal Sav. and Loan Ins. Corp. v. Capozzi*, 855 F.2d 1319, 1325 (8th Cir.1988), *vacated on other grounds*, 490 U.S. 1062, 109 S.Ct. 2058, 104 L.Ed.2d 624 (1989). "In the absence of a significant threat to any identifiable federal policy or interest, 'there is no federal interest in uniformity for its own sake.'" *Capozzi*, 855 F.2d at 1325 (quoting *In re "Agent Orange" Prod. Liability Litigation*, 635 F.2d 987, 993 (2d Cir.1980), *cert. denied sub nom. Chapman v. Dow Chemical Co.*, 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981)).

Manifestly, there exists an important congressional interest in establishing uniform regulation of federal savings and loan associations. *Fidelity Fed. Sav. and Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 166, 102 S.Ct. 3014, 3029, 73 L.Ed.2d 664 (1982). Allowing the diversified array of state laws governing director liability to apply to federal associations would result in a system of conflicting standards of conduct which would interfere with the congressional mandate of uniformity. Accordingly, this court rules that there does exist a "uniquely federal interest" of establishing a uniform approach to director liability with regard to federally chartered savings and loan institutions, and that application of federal common law in this area is appropriate.

B. *Application As Against Directors of State Chartered, Federally–Insured Institutions*

American Savings is treated as a state-chartered, federally-insured association for the purposes of this action since the operative acts predated its conversion from a state to a federally chartered institution. Therefore, the distinction between a federal association and a state association which is federally insured is of pivotal importance to the determination of whether the application of

federal common law is appropriate in this case.

Other federal courts have allowed federal common law claims against directors of savings and loan associations for breach of their fiduciary duty. *Eureka Fed. Sav. and Loan Ass'n v. Kidwell*, 672 F.Supp. 436, 439–41 (N.D.Cal.1987); *Fed. Sav. and Loan Ins. Corp. v. Sajovich*, 642 F.Supp. 74, 77 (C.D.Cal.1986); *First Hawaiian Bank v. Alexander*, 558 F.Supp. 1128, 1131–32 (D.Haw. 1983); *Rettig v. Arlington Hgts. Fed. Sav. & Loan Ass'n*, 405 F.Supp. 819, 826–27 (N.D.Ill. 1975); *City Fed. Sav. and Loan Ass'n v. Crowley*, 393 F.Supp. 644 (E.D.Wis.1975).[17] With only two exceptions, the above cases concerned federally chartered associations. The two exceptions were *Sajovich* and *First Hawaiian*, which involved state chartered but federally insured associations. The court in *First Hawaiian* treated the state association like a federal association because the state association "was federally insured and as a result subject to the same laws governing federal associations." *First Hawaiian*, 558 F.Supp. at 1132; *Sajovich*, 642 F.Supp. at 77.

This court respectfully disagrees with the reasoning of *First Hawaiian* and *Sajovich*. While federal common law is appropriate in the case of federal associations, the same justification does not exist in the case of state associations, whether or not such associations are federally insured. State chartered, federally-insured associations are subject to federal regulation. But this regulation is not as comprehensive as the regulation of federal associations.

Moreover, the congressional objective of establishing uniformity does not apply to state associations with the same intensity as it applies to federal associations. State associations are creatures of state law, and the state has at least an equal, if not greater, interest in formulating and controlling the law of director liability as to such associations. This fact undermines the "unique-

---

17. It should be mentioned that the *Kidwell* and *First Hawaiian* courts both refused to recognize a federal common law claim for negligence. *Kidwell* 672 F.Supp. at 441; *First Hawaiian*, 558

F.Supp. at 1131. Both courts treated negligence and fiduciary duty claims under federal law as being separate and distinct.

ness" of the federal interest in director liability. If follows that federal common law should not be applied to state chartered, federally-insured associations based on an alleged "uniquely" federal interest. *Federal Sav. and Loan Ins. Corp. v. Capozzi,* 855 F.2d 1319, 1325–26 (8th Cir.1988) (declining to apply federal common law to a case involving a state-chartered, federally insured association), *vacated on other grounds,* 490 U.S. 1062, 109 S.Ct. 2058, 104 L.Ed.2d 624 (1989).

For the foregoing reasons, this court declines to recognize a cause of action for director negligence under federal common law as applied to state chartered, federally-insured savings and loan institutions. Because the lack of an underlying action in federal common law is fatal to plaintiff's negligence per se claim, it is not necessary to determine whether the HOLA regulations at issue here satisfy the traditional elements of negligence per se. We leave for another day the discussion of the relevant standard of care and other details incumbent upon applying federal common law to the liability of directors of federally chartered savings and loan institutions.

## V. DEFENDANTS' MOTION TO STRIKE AND MOTION FOR A MORE DEFINITE STATEMENT

▇▇▇ In addition to their Motion to Dismiss, defendants have submitted a motion to strike and a motion for more definite statement. Defendants focus these motions on ¶ 95 of RTC's complaint. In paragraphs 59 through 94, RTC describes seven specific loans, as well as the alleged acts of negligence carried out by defendants. Paragraph 95 alleges:

> 95. In addition to the loans discussed above, the RTC is informed and believes that the following loans also illustrate unsafe or unsound transactions:
>   a. Broadway Towers ($5.6 million loss);
>   b. The Brewery ($3 million loss);
>   c. Silver Mill ($11.1 million loss).

In addition to the loans enumerated above, RTC reserves its right to name other examples of unsafe or unsound transactions.

Defendants request the court to strike the last sentence of ¶ 95 in which RTC expressly reserves the right to name other examples of unsafe loans at a later time.[18] In *Federal Deposit Ins. Corp. v. Wise,* 758 F.Supp. 1414, 1419 (D.Colo.1991) (citing *Leenen v. Ruttgers Ocean Beach Lodge, Ltd.,* 662 F.Supp. 240, 242 (S.D.Fla.1987)) the District of Colorado considered a statement similar to the one at issue here, wherein the FDIC attempted to reserve the right to offer additional transactions in later submissions to the court. The *Wise* court concluded that the defendants would be unable adequately to formulate a responsive pleading or a defense to the subsequent submissions and granted the defendants' motion to strike on the ground that allowing the FDIC to offer additional transactions later would unduly prejudice defendants. *Id.* at 1420. This court adopts the rule and the underlying reasoning set forth in *Wise* and strikes the last sentence of ¶ 95.

Turning to defendant's motion for more definite statement, standing alone, ¶ 95 does not provide defendants enough information for them to adequately formulate a responsive pleading because the allegedly "unsafe and unsound" nature of the transactions could mean anything. It may be that RTC is alleging that defendants acted with the same negligence with regard to the three loans set forth in ¶ 95 as is alleged with regard to the seven transactions set forth in ¶¶ 59–94, but defendants should not be made to guess about the matter. Paragraph 95 does not give fair notice of what individual defendants are supposed to have done wrong, which defendants so acted, and when, thus failing to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P., Rule 8(a)(2). Moreover ¶ 95 violates Fed.R.Civ.P., Rule 10(b) by failing to set forth the three transactions in separate counts if indeed the intent is to

---

18. Rule 12(f) Fed.R.Civ.P. allows a court to strike from any pleading any redundant, immaterial, impertinent, or scandalous matter. Motions to strike are not favored and are rarely granted. Wright & Miller, *supra,* at § 1380. However,

courts will grant motions to strike when a *defendant* cannot reasonably be expected to frame a responsive pleading or to defend against portions of a pleading.

assert claims for relief rather than to provide evidentiary illustrations.

Rule 10(b) requires that "each claim founded on a separate transaction or occurrence ... shall be stated in a separate count or defense whenever a separation facilitates the clear presentation of the matters set forth." The purpose of this rule is to "produce a pleading that is readily comprehensible to the opposing litigant and the court." Wright & Miller, *supra*, at § 1322. Accordingly, defendants' motion for more definite statement is granted for failure to comport with Rules 8(a) and 10(b) Fed.R.Civ.P.

Based on the foregoing, it is hereby

ORDERED, that defendants Motion to Dismiss with regard to plaintiff's claim for negligent mismanagement under Utah law is denied; it is

FURTHER ORDERED, that defendants' Motion to Dismiss with regard to RTC's claim for breach of fiduciary duty under Utah law is granted; it is

FURTHER ORDERED, that defendants' Motion to Dismiss with regard to RTC's claim for negligence per se under federal common law is granted; it is

FURTHER ORDERED, that defendants' Motion to Strike is granted with regard to the last sentence of ¶ 95 of RTC's complaint; it is

FURTHER ORDERED, that defendants' Motion for a More Definite Statement is granted, and plaintiff shall file and serve a further pleading, if it determines to pursue the matter, within 20 days of the date of this order.

IT IS SO ORDERED.