
**MIDLAND SAVINGS & LOAN CO. v. DUNMIRE.**

**DUNMIRE v. MIDLAND SAVINGS & LOAN CO.**

Nos. 840, 841.

Circuit Court of Appeals, Tenth Circuit.

Dec. 20, 1933.

Jno. D. Rogers, of Denver, Colo., for Midland Savings & Loan Co.

Page M. Brereton, of ·Denver, Colo., for Harry Dunmire.

Before LEWIS, PHILLIPS, and BRATTON, Circuit Judges.

PHILLIPS, Circuit Judge.

The Midland Company is a building and loan association organized under the laws of Colorado, and does business in Colorado, Oklahoma, and Arkansas.

Dunmire was the owner of four gold bond investment certificates of the association, as follows: No. 360,321 dated December 1, 1914, for 10 shares; and No. 360,345 for 50 shares, No. 360,346 for 19 shares, and No. 360,348 for 6½ shares, all dated January 3, 1916.

The material portions of certificate No. 345 are set out in Note 1.

---

Note 1.

"United States of America
"State of Colorado
"Established 1891

"Number 360345          Par Value $5000.

"The Midland Savings and Loan Company
"Authorized Capital $5,000,000.
" 'Gold Bond' Investment Certificate

"Cash Dividends          Full Participating

"This certifies, that, in consideration of the application made herefor, and the payment of the sum of Five Thousand Dollars ($5,000), the receipt whereof is hereby acknowledged, Harry Dunmire, the Investor, is the owner of Fifty (50) Shares of the 'Gold Bond' Class of the Capital Stock of the Midland Savings and Loan Company, subject to, and entitled to the benefits of the Laws of the State of Colorado, the Articles of Incorporation, By-Laws and Regulations of this Company and the Special Privileges and Provisions upon the back hereof, all of which are hereby referred to and made a part of this contract.

"Dividends will be paid the Investor by the Company in cash semiannually at the rate of Five per cent. per annum, upon the sum paid, in accordance with the coupons hereto attached, and additional dividends will be paid out of the accumulated earnings, as further provided herein.

"Any portion of the sum paid may be withdrawn at any time after Six months from the date hereof, on the surrender of this certificate and the coupons attached, for cancellation or reissue, in accordance with the rules governing withdrawals. Should twenty-five per cent. or more of the sum paid hereon be permitted to remain with the Company, the Investor by such withdrawal will not forfeit the benefits of the Additional or Excess Dividends apportioned. This Certificate is redeemable in Gold.

"In Witness Whereof, the said The Midland Savings and Loan Company, at its office in the City of Denver, Colorado, has caused this certificate to be signed by its President and Secretary, and its Corporate Seal to be attached, this Third (3rd) day of January, A. D. One Thousand Nine hundred and Sixteen.

"[Signed] F. E. Carringer, President.
"[Signed] F. W. Carringer, Secretary.
"[Corporate Seal.]

"Special Privileges.

"Provisions

" * * * (a) Excess Dividends.—The additional dividends out of the accumulated earnings as al-

The other certificates are substantially of the same tenor and effect as No. 345.

Until called for retirement, the Midland Company semiannually paid Dunmire dividends on such certificates at the rate of 5% per annum.

In June, 1924, the Midland Company informed Dunmire that on December 1, 1924, certificate No. 321 would have been in force ten years, and would then be retired. In November, 1924, the Midland Company sent Dunmire three drafts, one for $361.99 and one for $82.99 in payment of extra dividends on certificate No. 321, and one for $1,000 to retire such certificate. Dunmire accepted these drafts and cashed them. On November 30, 1925, the Midland Company requested Dunmire to send in certificates Nos. 345, 346, and 348 for retirement. In January, 1926, the Midland Company again requested Dunmire to surrender such certificates for retirement, and offered to pay him $7,088.61 on certificate No. 345, $2,693.72 on certificate No. 346, and $921.51 on certificate No. 348. Dunmire refused to surrender such certificates, and brought this suit for an accounting of the earnings of the Midland Company, alleging that under the provisions of such certificates he is entitled to share in all of the net earnings of the Midland Company, in addition to the dividends of 5% and 3% declared on such certificates by its directors.

On January 1, 1926, the Midland Company had earned $431,859.71 over and above dividends, operating, and other expenses paid, and losses charged off. This amount is reflected on its books as follows: Expense fund and undivided profits, $31,859.71, and contingent reserve fund, $400,000. Of such amounts $85,915.60 had accumulated prior to the issuance and sale of certificate No. 321, and $95,317.55 prior to the issuance and sale of the other Dunmire certificates.

lowed over and above the dividends paid in cash semiannually, will be equitably apportioned and reserved upon the sum paid hereon, at the first of each year. Such excess dividends will be at the full rate declared by the Company less the rate of cash dividends paid, and will be compounded. When this certificate has been in force Five years, the Investor will be entitled to receive in cash one-half of the accumulated excess dividends, and when this certificate has been in force Ten years, he may withdraw in cash all of the accumulated excess dividends—in accordance with the provisions of the Board of Directors, and thereafter he may receive like settlements for the accumulated excess dividends biennially. * * *

"(c) Modifications. The Conditions, provisions or privileges of this certificate can only be waived or modified by action of the Board of Directors. No agent or representative has power in behalf of the Company to make or modify this or any other contract, or to bind the Company by making any promises, or making or receiving any representation or information."

A statement of the resources and liabilities, reserve fund, and expense fund and undivided profits for each of the years 1915 to 1926 is set out in Note. 2.

On January 1, 1916, the Midland Company carried on its books four separate accounts of funds set aside from net profits, as follows:

Protection fund................ $ 2,873.14
Contingent reserve fund........ 70,887.38
Expense fund.................. 13,012.36
Loss and gain................. 11,175.40

These accounts on January 1, 1926, were as follows:

Protection fund................ $ 63,581.14
Contingent reserve fund....... 400,000.00
Expense fund................. 25,323.61
Loss and gain................. 6,536.10

The protection fund was accumulated to retire certain outstanding stock of the Midland Company. The contingent fund was built up by setting aside annually a portion of the net earnings as a reserve against losses.

The percentage of net earnings set aside,

Note 2.

| | | |
|---|---|---|
| **January 1st, 1915** | | |
| | Resources and liabilities | $1,270,136.76 |
| | Reserve fund | 70,892.94 |
| | Expense fund and undivided profits | 15,022.66 |
| **January 1st, 1916** | | |
| | Resources and liabilities | $1,400,283.52 |
| | Reserve fund | 70,887.38 |
| | Expense fund and undivided profits | 24,268.70 |
| **January 1st, 1917** | | |
| | Resources and liabilities | $1,608,397.71 |
| | Reserve fund | 83,000.00 |
| | Expense fund and undivided profits | 23,179.75 |
| **January 1st, 1918** | | |
| | Resources and liabilities | $1,920,329.07 |
| | Reserve fund | 96,000.00 |
| | Expense fund and undivided profits | 30,797.54 |
| **January 1st, 1919** | | |
| | Resources and liabilities | $2,271,001.57 |
| | Reserve fund | 99,290.76 |
| | Expense fund and undivided profits | 45,323.39 |
| **January 1st, 1920** | | |
| | Resources and liabilities | $2,832,503.78 |
| | Reserve fund | 120,897.77 |
| | Expense fund and undivided profits | 53,917.12 |
| **January 1st, 1921** | | |
| | Resources and liabilities | $3,305,002.13 |
| | Reserve fund | 125,000.00 |
| | Expense fund and undivided profits | 29,245.86 |
| **January 1st, 1922** | | |
| | Resources and liabilities | $3,860,553.09 |
| | Reserve fund | 140,000.00 |
| | Expense fund and undivided profits | 31,745.27 |
| **January 1st, 1923** | | |
| | Resources and liabilities | $5,043,242.38 |
| | Reserve fund | 180,000.00 |
| | Expense fund and undivided profits | 31,002.11 |
| **January 1st, 1924** | | |
| | Resources and liabilities | $6,195,377.43 |
| | Reserve fund | 220,000.00 |
| | Expense fund and undivided profits | 29,720.34 |
| **January 1st, 1925** | | |
| | Resources and liabilities | $7,483,666.47 |
| | Reserve fund | 265,000.00 |
| | Expense fund and undivided profits | 33,095.44 |
| **January 1st, 1926** | | |
| | Resources and liabilities | $9,005,034.35 |
| | Reserve fund | 400,000.00 |
| | Expense fund and undivided profits | 31,859.71 |

and the relative proportion of reserve to total assets, during each of the years 1916 to 1925 are set out in Note 3.

A large percentage of net earnings was set aside in 1925 in order to meet the requirements of the State Bank Commissioner of Oklahoma, one of the states in which the Midland Company was doing business.

Five per cent. of total assets is recognized as a proper reserve fund by most of the states having legislation on the subject.

In 1920 the Midland Company purchased a tract of land in Denver as a site for an office building, and paid therefor $132,500. About January 1, 1921, it depreciated the value thereof on its books and from that date to December 21, 1926, carried it at $75,000. There was a one-story building located on this site. The return from rentals was between 4% and 5% of the purchase price. The Midland Company was declaring dividends at the rate of 8% on its stock, and in order to bring the earnings of the building site in line with the other earnings of the company, or to approximately 8%, it was carried at that book value.

There is no contention that the directors of the Midland Company acted fraudulently, arbitrarily, or in bad faith in declaring the amount of dividends which should be paid on stock, setting up reserves, or in determining the value at which physical assets should be carried on the books of the Midland Company.

By stipulation the parties agreed that the Midland Company, during the period in question, had the right to place in a surplus or reserve fund such amount of the profits for any year as its board of directors deemed advisable, but without prejudice to Dunmire's asserting in this suit his claim to a share of such fund on retirement of his certificates.

The Midland Company shortly after the filing of this suit tendered to Dunmire and paid into the registry of the court $7,088.61 on certificate No. 345, $2,693.72 on certificate No. 346, and $921.51 on certificate No. 348, being the principal of such certificates together with 3% excess dividends thereon with compound interest. These amounts were paid over to Dunmire under stipulation of the parties.

The trial court found that 6% of the annual net earnings would have provided adequate additions to the reserve fund; that the Midland Company had earned, during the period in question, $178,524.60 in excess of dividends paid and reasonable reserves, and that Dunmire was entitled to participate therein to the extent of $3,959.74, and to recover interest on such sum from January 1, 1926, at the rate of 8% to September 15, 1932, aggregating $2,123.12.

A decree was entered accordingly and both parties having appealed.

Dunmire contends that the court should have disallowed other reserves, while the Midland Company contends that Dunmire was only entitled to the face value of his certificate, plus dividends.

Section 2799, Comp. L. Colo. 1921, provides that building and loan associations shall be managed and controlled by a board of directors.

Section 3 of the by-laws of the Midland Company provides that its members shall elect a board of directors which shall manage and exercise the general corporate powers of the company, elect its officers, prescribe their duties, and adopt, alter, or repeal its by-laws.

Section 2792, supra, provides that every such association may issue and sell shares of stock with or without full participation in the earnings of such association, or partially in limited dividend-bearing stocks, as may be provided by the laws of such association.

The statutes of Colorado make no provision with respect to the setting up of contingent or reserve funds by building and loan associations.

Section 26 of such by-laws provides:

"Each year an account of profit and loss shall be taken and the excess either way apportioned to the shares in force at the time according to the terms of the certificate held by the shareholders in the respective classes of stock, as the Board of Directors may order; Provided, That such an amount from the profits any year shall be placed in a surplus or reserve fund as the Board of Directors may deem advisable."

Section 24 of such by-laws provides that, whenever it shall be for the best interests of the company, the directors may call any certificate not borrowed on for payment at its actual value and cancellation.

Note 3.

| | % of Net Earnings | % of Total Assets |
|---|---|---|
| January 1, 1916 | | 5.06 |
| December 31, 1916 | 11.95 | 5.16 |
| December 31, 1917 | 10.11 | 5.00 |
| December 31, 1918 | 2.23 | 4.37 |
| December 31, 1919 | 11.97 | 4.26 |
| December 31, 1920 | 2.64 | 3.78 |
| December 31, 1921 | 6.67 | 3.62 |
| December 31, 1922 | 13.20 | 3.56 |
| December 31, 1923 | 9.31 | 3.55 |
| December 31, 1924 | 9.48 | 3.54 |
| December 31, 1925 | 27.43 | 4.44 |

The amounts to be set aside as reserves and the amounts to be paid as dividends by the Midland Company were matters of internal management and policy, the determination of which was vested in its directors.

In the absence of fraud, gross mismanagement, or ultra vires acts by those lawfully entrusted with the management of a corporation, neither a court of law nor equity has jurisdiction to interfere with, or control the internal affairs or policy of the corporation. Consolidated Cement Corp. v. Pratt (C. C. A. 10) 47 F.(2d) 90, 93; Bisbee v. Midland Linseed P. Co. (C. C. A. 8) 19 F.(2d) 24, 30.

The rule applies to the setting aside of reserve funds and the declaration of dividends, and courts will not interfere with the discretion of directors in such matters, unless they have acted fraudulently, capriciously or unreasonably. In re Brantman (C. C. A. 2) 244 F. 101, 103; Knapp v. S. Jarvis Adams Co. (C. C. A. 6) 135 F. 1008, 1011; Hall v. Woods, 325 Ill. 114, 156 N. E. 258, 267.

It also applies to the amounts at which the physical assets shall be carried on the books of the corporation.

It not only does not appear that in determining the amounts of dividends and reserves, and the values of physical assets the directors acted fraudulently, capriciously, or unreasonably, but, on the contrary, it does appear that in the light of subsequent economic changes they exercised a wise business judgment and foresight.

We conclude that under the facts here presented the trial court should not have substituted its judgment and discretion for that of the directors of the corporation with respect to what was a reasonable reserve fund, and should not have directed the payment in dividends of what it deemed to be in excess of a reasonable reserve.

We find nothing in the terms of the certificate which entitled Dunmire to more than the face thereof, together with the regular dividend of 5% per annum, and such extra dividends as the directors, acting honestly and reasonably and not fraudulently or capriciously, declared.

There are practical reasons why a certificate-holder in a building and loan association, whose certificate is called, paid off, and canceled, should not have distributed to him a proportionate share of the reserve fund of the association. Such reserve fund is created to take care of contingent liabilities and losses occurring in the future. To so deplete it would be manifestly unfair to certificate-holders whose certificates remain outstanding, and would deter further investments in the association's certificates, which are essential to the successful carrying on of its plan of operation.

In our opinion the term, actual value, as used in by-law 24, when read in the light of the plan of operation of the Midland Company and the certificates themselves, means face value plus dividends.

We conclude that the Midland Company tendered all to which Dunmire was entitled. The decree is reversed and the cause remanded with instructions to dismiss the bill at Dunmire's cost.