Sam DUNLAP, Ed Bachmann, Margge Adler, Janalyn Kehm, and Lawrence D. Ochs, individually, Plaintiffs–Appellants,

v.

COLORADO SPRINGS CABLEVISION, INC., a Colorado corporation; Leonard Tow, John Doe, and Richard Doe, individually, Defendants–Appellees.

No. 88CA1317.

Colorado Court of Appeals,
Div. III.

May 3, 1990.

Rehearing Denied June 7, 1990.

Certiorari Granted Nov. 13, 1990.

J. Gregory Walta, James Robert Barash, Colorado Springs, for plaintiffs-appellants.

Holland & Hart, Gregory R. Piché, Andrew I. Gavil, Todd W. Miller, Denver, for defendants-appellees.

PLANK, Judge.

The plaintiffs, all individuals who purchased cable services from defendant Colorado Springs Cablevision, Inc., brought this action as a result of their having been required to pay higher prices than were charged for the same services offered by the defendants to cable-competitive area customers. The trial court dismissed their complaint pursuant to C.R.C.P. 12(b)(5) for failure to state a claim upon which relief could be granted. Plaintiffs appeal that dismissal, and we affirm.

## I.

■ The plaintiffs initially assert that the trial court erred in dismissing their claim arising under the Colorado Unfair Practices Act (Act), § 6-2-101, et seq., C.R.S. We disagree.

Section 6-2-103(1), C.R.S., prohibits locality discrimination. Generally, this section prohibits the sale of goods or services in distinct locations at different prices made with the intention of destroying competition.

The plaintiffs assert that they were "overcharged" because they did not benefit from the rate reductions implemented by the defendants in the competitive area. Consequently, the plaintiffs sought treble damages under the Act measured by the difference between the rates they were charged and the rates charged to competitive-area residents. Thus, they seek the benefit of the reduced rates charged competitive-area customers.

Adoption of the Act was prompted by fears that through selective, geographic discounting or sales "below cost," large sellers could drive their smaller rivals from the marketplace. *See* § 6-2-102, C.R.S. *Flank Oil Co. v. Tennessee Gas Transmission Co.*, 141 Colo. 554, 349 P.2d 1005 (1960); *Dikeou v. Food Distribution Ass'n*, 107 Colo. 38, 108 P.2d 529 (1940).

The Act is aimed at preventing the destruction of competition in an area by the use of unlawfully low prices designed to achieve that result. "The very purpose of an act such as this is to prevent ruinous price-cutting, by which the business of competitors might be injured and competition destroyed." *Dikeou v. Food Distributors Ass'n, supra.* Thus, the Act is intended to address and correct the competitive impact of *low* prices; the issue of overcharging is unrelated to the Acts' intent.

■ To invoke this Act, a potential plaintiff must assert an injury directly caused by an alleged violation of the type that "antitrust laws were intended to prevent." *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977).

Here, the fact that some cable-subscribers were being charged a higher rate for services is not an injury of the type the Act was designed to prevent. Therefore, we agree with the trial court that plaintiffs have failed to state a claim for relief under the Act.

## II.

■ The plaintiffs next assert that the defendants' violation of Colorado Springs Municipal Code (Code) § 13-2-409(B) was negligence *per se*. We disagree.

That Code provision states in part:

"No [cable television] operator shall establish or maintain any unreasonable difference as to rates, charges, service, and activities or in any other respect either between localities or as between any class of service.... The City Council may determine any question arising under this section."

■ Before a claim for negligence *per se* can be maintained, a party must prove that violation of an ordinance creates or unreasonably increases a risk of injury to persons or property. Restatement (Second) of Torts § 288 (1965). *See Bittle v. Brunetti*, 750 P.2d 49 (Colo.1988). If the exclusive purpose of a legislative enactment is to secure rights or privileges to the public at large, not citizens in their individual capaci-

ty, no basis exists for a claim of negligence *per se.* Restatement (Second) of Torts § 288 (1965).

The trial court found that there was no right of action vested with the plaintiffs for alleged Code violations. The Code does not grant the plaintiffs the right to enforce Code sections. Instead, the City Council has retained jurisdiction over these particular provisions.

Thus, we hold that the Code's rate discrimination ordinance is not a legislative enactment designed to create individual legal claims for cable television subscribers rather than to benefit the public at large.

Therefore, we agree with the trial court's finding that the plaintiffs have failed to state allegations that would entitle them to relief on a theory of negligence *per se.*

We find the other allegations of error to be without merit.

Accordingly, the judgment of the trial court is affirmed.

STERNBERG and MARQUEZ, JJ., concur.