RESOLUTION TRUST CORPORATION, a corporate instrumentality of the United States of America, Plaintiff,

v.

Richard D. HEISERMAN, individually and as a general and limited partner in Heiserman Family Partners, Ltd., and as a grantor, trustee and beneficiary of Heiserman Family Trust; Walter C. Kane, Guy E. Boyer, David G. Marberry, John C. Root, Charles R. Babb, James D. Grow, John B. Howell, Chester A. Latcham, Jr., individually and as a general and limited partner in Latcham Family Partners, Limited, and as a grantor, trustee and beneficiary of Latcham Family Trust; William T. McCallum, individually, and as a general and limited partner in McCallum Family Partners, Ltd., and as a grantor, trustee and beneficiary of McCallum Family Trust; James C. Shearon, individually and as a general and limited partner in JCS Family Partners, Ltd., and as a grantor, trustee and beneficiary of JCS Family Trust; Heiserman Family Partners, Ltd., a limited partnership; Patricia A. Heiserman, as a general partner and limited partner in Heiserman Family Partners, Ltd.; John Does One and Two, as other unknown general and limited partners of Heiserman Family Partners, Ltd.; Heiserman Family Trust; Richard L. Smith, as a trustee of Heiserman Family Trust; John Does Three and Four, as other unknown trustees and beneficiaries of Heiserman Family Trust; Latcham Family Partners, Limited, a limited partnership; John Does Five and Six, as other unknown general and limited partners of Latcham Family Partners, Limited; Latcham Family Trust; John Does Seven and Eight, as other unknown trustees and beneficiaries of Latcham Family Trust; McCallum Family Partners, Ltd., a limited partnership; Leslie A. McCallum, as a general partner and limited partner in McCallum Family Partners, Ltd.; John Does Nine and Ten, as other unknown general and limited partners of McCallum Family Partners, Ltd.; McCallum Family Trust; John D. Clayton and Alan D. MacLennan, as trustees of McCallum Family Trust; John Does Eleven and Twelve, as other unknown trustees and beneficiaries of McCallum Family Trust; JCS Family Partners, Ltd., a limited partnership; Carol M. Shearon, as a general partner and limited partner in JCS Family Partners, Ltd.; John Does Thirteen and Fourteen, as other unknown general and limited partners of JCS Family Partners, Ltd.; JCS Family Trust; John Does Fifteen and Sixteen, as other unknown trustees and beneficiaries of JCS Family Trust; Engel & Rudman, P.C., a Colorado professional corporation; Barry S. Engel, personally and as a shareholder in Engel & Rudman, P.C.; Ronald L. Rudman, personally and as a shareholder in Engel & Rudman, P.C.; John Does Seventeen and Eighteen, as other unknown shareholders in Engel & Rudman, P.C.; Carolyn P. Boyer; and Nancy A. Marberry, Defendants.

Civ. A. No. 93-B-944.

United States District Court, D. Colorado.

Nov. 1, 1993.

Kobayashi & Associates, P.C., John M. Kobayashi, Kathleen M. Kulasza and Linda J. Creagan, Denver, CO, for plaintiff Resolution Trust Corp.

Vinton, Waller, Slivka & Panasci, Kevin D. Allen, Margaret M. McClellan, Denver, CO, for defendants Richard D. Heiserman, Patricia A. Heiserman, Richard L. Smith, Heiserman Family Partners, Ltd. and the Heiserman Family Trust.

Bradley, Campbell, Carney & Madsen, Victor F. Boog, Thomas A. Nolan, Golden, CO, for defendant Walter C. Kane.

Bostrom & Sands, P.C., Jon F. Sands, Thomas DeVine, Denver, CO, for defendants Guy E. Boyer and Carolyn P. Boyer.

Defendants David G. Marberry and Nancy A. Marberry, pro se.

Roos, Cohen & Long, P.C., Alvin M. Cohen, Denver, CO, for defendant John C. Root.

Brega and Winters, P.C., Charles F. Brega, Wesley B. Howard, Carla Minckley, Denver, CO, for defendant Charles R. Babb.

Berryhill, Cage & North, P.C., James R. Cage, Denver, CO, for defendant James D. Grow.

Rothgerber, Appel, Powers & Johnson, Alan W. Anderson, Denver, CO, for defendant John B. Howell.

Ireland, Stapleton, Pryor & Pascoe, P.C., William J. Leone, Denver, CO, for defendants Chester A. Latcham, Jr., Latcham Family Partners Limited, and Latcham Family Trust.

Williams, Youle & Koenigs, P.C., Michael A. Williams, Amy L. Benson, Denver, CO, for defendants William T. McCallum, individually and as a general and limited partner of McCallum Family Partners, Ltd., and as grantor, trustee and beneficiary of the McCallum Family Trust, Leslie A. McCallum, as a general partner and limited partner in McCallum Family Partners, Ltd., McCallum Family Partners, Ltd., McCallum Family Trust, and John D. Clayton and Alan D. MacLennan as trustees of McCallum Family Trust.

Defendant James C. Shearon, pro se.

Robinson, Waters, O'Dorisio and Rapson, P.C., Stephen L. Waters, Denver, CO, for defendants James C. Shearon, in his alleged capacity as a general and limited partner in JCS Family Partners, Ltd., and as a Grantor, Trustee and Beneficiary of JCS Family Trust, and not individually; Carol M. Shearon, as a general and limited partner of JCS Family Partners, Ltd.; JCS Family Partners, Ltd., a limited partnership; JCS Family Trust; and John Does 13, 14, 15 and 16.

Bader & Villanueva, P.C., Jeffrey M. Villanueva, Steven Feder, Denver, CO, for defendants Engel & Rudman, P.C., Barry S. Engel, and Ronald L. Rudman.

MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

The Resolution Trust Corporation (RTC), in its corporate capacity, brings this action against former directors and officers (D & O defendants) of Capitol Federal Savings and Loan Association of Denver (Capitol Federal), a failed federally insured thrift. RTC alleges negligence, negligence *per se*, gross, willful and wanton negligence, and breach of fiduciary duty of care by the D & O defendants in connection with Capitol Federal's issuance and management of loans resulting in the thrift's insolvency and failure. RTC also asserts claims against certain D & O defendants and their assigns for breach of the fiduciary duty of loyalty alleging diversion of Capitol Federal funds to pay personal legal fees to establish limited partnerships and trusts to shelter their personal assets from creditors when Capitol Federal's failure was imminent. RTC seeks to set aside these transfers or recover their value. Finally, RTC seeks to recover legal fees from the law firm of Engel & Rudman, P.C. and certain of its attorneys (collectively Engel & Rudman) together with other damages caused by the alleged fraudulent transfers. RTC does not allege that Engel & Rudman in any way contributed to Capitol Federal's insolvency or failure. The claims, then, can be viewed broadly in terms of the D & O defendants' liability for errors and omissions and fraudulent transfers.

This action is under the laws of the United States, specifically including 12 U.S.C. § 1441a(b) and 12 U.S.C. § 1821(k). Jurisdiction is pursuant to 12 U.S.C. § 1441a(*l*)(1) and 28 U.S.C. §§ 1331 and 1345. This court also has pendent jurisdiction over the state law claims.

Before May 4, 1990, Capitol Federal was regulated by the Federal Home Loan Bank Board (FHLBB) and then by its successor the Office of Thrift Supervision (OTS). On May 4, 1990, OTS declared Capitol Federal insolvent and appointed RTC as its conservator. OTS appointed RTC as receiver for Capitol Federal on June 15, 1990 to liquidate and wind up its affairs. As receiver, RTC succeeded to all assets, rights, titles, powers, and privileges of Capitol Federal and its shareholders, members, account holders, depositors, officers and directors. Also on June 15, 1990, a new federal savings association, Capitol Federal Savings and Loan Association was chartered and the RTC was appointed its conservator. New Capitol was

dissolved on July 12, 1991 when select assets and deposits were transferred to the Central Bank of Denver· through a purchase and assumption agreement. All other assets of Capitol Federal and of New Capitol, including all claims against the officers, directors, and attorneys of Capitol Federal, were later sold to RTC in its corporate capacity pursuant to 12 U.S.C. § 1441a(b)(4) and 12 U.S.C. § 1821(d)(2)(A).

The D & O defendants move pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss RTC's claims for negligence, negligence *per se*, and breach of fiduciary duty. RTC moves pursuant to Fed.R.Civ.P. 12(f) to strike the D & O defendant's affirmative defenses of estoppel, waiver, contributory and comparative negligence, laches, assumption of risk, ratification, consent, acquiescence, failure to mitigate damages, lack of causation, unclean hands, intervening and superseding causes and reliance to the extent the conduct of·the RTC or other federal regulatory agencies is implicated in these defenses. RTC likewise moves to strike Engel & Rudman's affirmative defenses of estoppel, waiver, laches, and failure to mitigate damages. Finally, RTC seeks to strike certain D & O defendants' indemnification defenses and certain statute of limitations defenses of defendants.

The motions are now fully briefed and argument was heard· on October 22, 1993. For the reasons stated below, I will deny the D & O defendants' motions to dismiss and grant RTC's motions to strike.

## I.

■ For ·the purposes of a Rule 12(b)(6) motion to dismiss, I accept all factual allegations as true and resolve all reasonable inferences in favor of the plaintiff. *Tri–Crown, Inc. v. American Federally Sav. & Loan Ass'n,* 908 F.2d 578, 582 (10th Cir.1990). Dismissal is proper only when it appears beyond doubt that no set of facts will support a plaintiff's right to relief. *Gregory v. U.S./ U.S. Bankruptcy Court for Dist. of Colorado,* 942 F.2d 1498, 1500 (10th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 2276, 119 L.Ed.2d 202 (1992).

## 1.

The Financial Institutions Reform Recovery and Enforcement Act of 1989 (FIRREA), 12 U.S.C. § 1821(k), establishes a national uniform minimum standard of gross negligence for management of a financial institution and also contains a savings clause which enables the RTC to bring claims for a higher standard of negligence, ordinary negligence, if such claims are allowed under state law. *F.D.I.C. v. Canfield,* 967 F.2d 443 (10th Cir. 1992), *cert. dismissed,* — U.S. —, 113 S.Ct. 516, 121 L.Ed.2d 527 (1992). The savings clause of section 1821(k) states "Nothing in this paragraph shall impair or affect any *right of the corporation under other applicable law.*" The Tenth Circuit in construing § 1821(k) held that "other applicable law" in § 1821(k) means "*all* other applicable law", including state based claims for ordinary negligence. *F.D.I.C. v. Canfield,* 967 F.2d at 446; *see F.D.I.C. v. McSweeney,* 976 F.2d 532, 538 n. 7 (9th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 2440, 124 L.Ed.2d 658 (1993) (the express saving language in § 1821(k) preserving the FDIC's rights 'under other applicable law' preserves its preexisting federal common law rights). Although *F.D.I.C. v. Isham,* 777 F.Supp. 828 (D.Colo. 1991) presaged the rule in *Canfield,* I did not there address the precise issue presented here.

That issue is whether under Colorado law as "other applicable law", bank officers and directors may be held liable for ordinary negligence. The D & O defendants argue that under Colorado law, corporate directors and officers, specifically bank officers and directors, are held to the lower standard of gross negligence. I disagree.

■ First, I hold that by statute, Colorado holds bank directors to the ordinary negligence standard of due care. C.R.S. § 7–5–101(2) (1987 Rep.Vol. 3A), enacted in 1981, provides in pertinent part that:

A director shall perform his duties as a director ... in good faith, in a manner he reasonably believes to be in the best interests of the corporation, *and with such care as an ordinarily prudent person in a like position would use under similar circumstances.* (emphasis added).

In adopting this standard, the Colorado General Assembly used the precise language that defines ordinary common law negligence. *See United Blood Services, Inc. v. Quintana,* 827 P.2d 509, 519 (Colo.1992) (ordinary negligence is "measured by what a reasonable person of ordinary prudence would or would not do under the same or similar circumstances"). The clear, plain, and unambiguous language of § 7–5–101(2) supports my conclusion that the Colorado General Assembly intended to hold bank directors to an ordinary negligence standard of care.

To support their gross negligence argument, the D & O defendants point to the statute's language that provides a director shall perform his duties "in good faith, in a manner he reasonably believes to be in the best interests of the corporation...." Arguing that the statute incorporates the "business judgment rule", which in turn elevates the corporate director's duty of care above that of ordinary negligence, the D & O defendants misread the statute and misunderstand the business judgment rule.

■■■ The business judgment rule holds that "directors and officers of the corporation will not be held liable for errors or mistakes in judgment, pertaining to law or fact, when they have acted on a matter calling for the exercise of their judgment or discretion, when they have used such judgment and have so acted in good faith." *Financial Industrial Fund, Inc. v. McDonnell Douglas Corp.,* 474 F.2d 514, 518 (10th Cir.1973). Indeed, § 7–5–101(2) appears to incorporate within it the business judgment rule. I hold further, however, that the business judgment rule does not convert ordinary negligence to gross, willful or wanton negligence, but rather, it is an affirmative defense to an ordinary negligence claim.

■■■ I have found no reported court decision construing § 7–5–101(2) and none have been cited by the parties. However, it is particularly appropriate to interpret § 7–5–101(2) in light of the common law and where, as here, there is no indication to the contrary, the language of the statute may be given its common law meaning. *U.S. v. Cox,* 593 F.2d 46, 49 (6th Cir.1979); *Allen v. People,* 485 P.2d 886, 887–888 (Colo.1971). Both

federal and Colorado state common law are consistent with my reading of § 7–5–101(2).

The D & O defendants rely heavily on *Midland Savings and Loan Co. v. Dunmire,* 68 F.2d 249 (10th Cir.1933). There it was held that the district court should not have interfered with the directors' decision for payment of dividends absent a showing that the directors had acted "fraudulently, capriciously or unreasonably." *Midland,* 68 F.2d at 252. However, the term "unreasonably" is a judicial recognition of the reasonable person standard embodied in C.R.S. § 7–5–101(2).

Moreover, *Midland* was decided five years before *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Federal common law would have controlled the Tenth Circuit's decision in *Midland.* By 1933, federal common law had long recognized that officers and directors of banks "must exercise ordinary care and prudence in the administration of the affairs of a bank". *Briggs v. Spaulding,* 141 U.S. 132, 165, 11 S.Ct. 924, 935, 35 L.Ed. 662 (1891). Most recently the Tenth Circuit stated that officers and directors of financial institutions "owe a high degree of duty to the general public and stockholders." *F.D.I.C. v. Appling,* 992 F.2d 1109, 1113–1114 (10th Cir. 1993).

Even before passage of § 7–5–101(2), the Colorado Supreme Court indicated that it would interpret Colorado common law consistent with *Briggs* as establishing a higher standard of care, *i.e.,* ordinary negligence for bank directors. In *Holland v. American Founders Life Insurance Co. of Denver,* 376 P.2d 162, 166 (Colo.1962), the court stated "the directors of a business corporation *other than a bank* are not to be held responsible for mere errors of judgment or for want of prudence short of clear and gross negligence." (emphasis added).

The Colorado Supreme Court has more recently given clearer indication that ordinary negligence claims lie against bank directors. *F.D.I.C. v. American Casualty Co. of Reading, Pa.,* 843 P.2d 1285 (Colo.1992). *American Casualty* sought to avoid liability for the F.D.I.C.'s negligence and breach of

**1464**

fiduciary duty claims under a "regulatory exclusion" provision of an insurance policy. The Colorado Supreme Court held that judicial enforcement of the regulatory exclusion in the insurance policy would contravene important public considerations. In explaining the public policy considerations, the court stated:

> Pursuant to the Colorado Banking Code, the FDIC, as liquidator of the Buena Vista Bank, *had the right to sue the bank's former directors for the negligence and breach of fiduciary duty* ... in order to provide some equitable compensation to the banks depositors, creditors, and stockholders for losses sustained by them as a result of the former directors' negligence and breach of fiduciary duty. (emphasis added) *Id.* at 1295.

■ In short, I conclude that interpreted in light of common law, § 7–5–101(2) holds bank directors to the higher standard of the exercise of ordinary care and prudence in the administration of the affairs of a bank and that failure to do so gives rise to a cause of action for ordinary negligence.

The D & O directors' reliance on *Rywalt v. Writer Corp.,* 34 Colo.App. 334, 526 P.2d 316 (1974) is misplaced. There the Colorado Court of Appeals refused to interfere in situations where directors acted in good faith within their corporation's powers and with the exercise of honest business judgment. *Id.* at 317. *Rywalt,* decided before the passage of § 7–5–101(2), merely recognizes the business judgment rule, now incorporated into § 7–5–101(2).

■ The business judgment rule, however, is an affirmative defense. *F.D.I.C. v. Wheat,* 970 F.2d 124, 130 (5th Cir.1992).

> First, the business judgment rule is a defense, properly raised by the defendant in response to allegations of misconduct [citations omitted]. Second, a ruling on the applicability of the business judgment rule is peculiarly a question of fact, wholly inappropriate for consideration on a motion to dismiss [citation omitted]. Thus, the defendants' objections to the pleadings based upon the business judgment rule have no merit. *Federal Sav. and Loan Ins. Corp.*

*v. Musacchio,* 695 F.Supp. 1053, 1064 (N.D.Cal.1988).

Moreover:

> It has been said that the so-called "business judgment rule" does not conflict with the concept of negligence. In other words, when courts say that they will not interfere in matters of business judgment, it is presupposed that judgment-reasonable diligence—has in fact been exercised. Fletcher, Cyclopedia of the Law of Private Corporations § 1040 (1986).

When the business judgment rule is considered in light of the substantive law of ordinary negligence, it is clear that a director must be reasonably diligent and careful in the first instance in performing his duties in order to invoke the business judgment rule defense. *Hoye v. Meek,* 795 F.2d 893, 896 (10th Cir.1986) (applying Oklahoma law).

■ Section 7–5–101(2) speaks specifically to director liability. Nevertheless, I conclude that in light of the common law and the public policy concerns governing director liability for negligence, bank officers are subject to this same higher standard of care. *See F.D.I.C. v. Appling,* 992 F.2d at 1113–1114.

Although my reading of § 7–5–101(2) and my understanding of the common law may lead one to further conclude that in Colorado all corporate officers and directors are held to a simple negligence standard of ordinary care, that issue need not be decided here. The D & O defendants are *bank* directors and officers. My holdings are thus limited to that context.

■ The Colorado Supreme Court has given ample indication that, were it directly to address the issue here, it would adopt the rule that bank officers and directors must exercise ordinary care and prudence in the administration of the bank's affairs. *See, e.g., Briggs v. Spaulding,* 141 U.S. 132, 165, 11 S.Ct. 924, 935, 35 L.Ed. 662 (1891). Because I conclude that the standard of care for bank officers and directors under Colorado law is ordinary negligence, the D & O defendants' motion to dismiss RTC's negligence claims is denied.

2.

■ The D & O defendants next contend that RTC's claim for breach of fiduciary duty of care must be dismissed because gross negligence is the applicable standard of care. Again, I disagree.

First, the D & O defendants rely entirely on *Washington Bancorporation v. Said,* 812 F.Supp. 1256 (D.D.C.1993) and *Aronson v. Lewis,* 473 A.2d 805 (Del.Supr.1984). These cases interpret Delaware law and are neither binding nor persuasive as to Colorado law.

More importantly, as I held .above, § 7–5–101(2), C.R.S. establishes an ordinary negligence standard of care for bank directors. The same standard of care weaves its way into a claim for breach of the fiduciary duty of care. Although this statute has not been applied to a claim of breach of the fiduciary duty of due care, the Tenth Circuit, in *Hoye v. Meek,* interpreted a parallel statutory duty of care which read:

> The directors ... shall discharge their duties in good faith, *and with that diligence, care, and skill which ordinarily prudent men would exercise under similar circumstances in like position.* (emphasis added).

*Hoye,* 795 F.2d at 895, *citing,* 18 Okla.Stat. Ann. § 1.34(b). In upholding a verdict against a bank director for breaching his duty of care, the court stated that this Oklahoma statute sets forth an objective standard of the ordinary prudent man and the legislature intended this standard of care to govern those charged with responsibility for other people's money. *Hoye,* 795 F.2d at 896. In a more recent Tenth Circuit decision also interpreting Oklahoma law, the court held the "ordinary prudent man" standard applicable to directors *and* officers:

> *Officers and directors of banks* are fiduciaries and at common law the liability for their acts ... stems from such a relationship ... The duty resting upon directors has been variously defined as requiring such care and diligence as an *ordinarily prudent man* would exercise with ... the administration and management of ·such moneyed institution.... they owe a high degree of duty to the general public and stockholders ... This statement of the

"fiduciary duty" is the prevailing one in this circuit. (emphasis added). *F.D.I.C. v. Appling,* 992 F.2d, 1109, 1113–14 (10th Cir. 1993). .

In light of these Tenth Circuit decisions, I conclude that, like Oklahoma, a breach of fiduciary duty of care claim against banking officers and directors can be based on simple negligence under Colorado law.

■ The D & O defendants alternatively · argue that the business judgment rule provides a basis for dismissing the RTC's breach of fiduciary duty of care claims. They contend that absent allegations of bad faith, fraud or conflict of interest, RTC's claims must be dismissed. Once · again, I disagree because the business judgment rule is a fact bound affirmative defense which provides no basis for dismissal under Rule 12(b)(6). *See Federal Sav. and Loan Ins. Corp. ·v. ·Musacchio,* 695 F.Supp. 1053.

■ . Where, as here, the RTC alleges that the D & O defendants acted imprudently, negligently, unreasonably, and even recklessly in exercising their duties, the business judgment rule is a defense and not a basis for dismissing RTC's claims under Fed. R.Civ.P., 12(b)(6). The business judgment rule offers no protection to those who have · not been diligently careful in performing their duties. *See, e.g., NCR Corp. v. American Tel. and Tel. Co.,* 761 F.Supp. 475, 491 (S.D.Ohio 1991).

3.

The D & O defendants next contend that they can not be held liable for negligence *per se* based on RTC's allegations of simple negligence. The D & O defendants argue that the standard of care for RTC's negligence *per se* claim is gross negligence and, thus, they must be dismissed along with the negligence claims. I disagree.

■ In a *per se* claim, the standard of care is determined by statute, regulation or ordinance, and violation of that standard of care conclusively establishes negligence. *Largo Corp. v. Crespin,* 727 P.2d 1098, 1107 (Colo.1986). In *Dunlap v. Colorado Springs Cablevision, Inc.,* 799 P.2d· 416 (Colo.App.

1990), *reversed on unrelated grounds,* 829 P.2d 1286 (Colo.1992), the court stated: "Before a claim for negligence *per se* can be maintained, a party must prove that violation of an ordinance creates or unreasonably increases a risk of injury to person or property". *Dunlap,* 799 P.2d at 417, *citing* Restatement (Second) of Torts § 288 (1965), corollary to § 286. The Restatement (Second) of Torts § 286 provides:

> The court may adopt *as the standard of conduct of a reasonable man* the requirements of a legislative enactment or an administrative regulation ... (emphasis added).

Comment (i) to Restatement (Second) of Torts § 285 (Determination of Standard of Conduct) states:

> By prohibiting a particular act for the purpose of protecting the interests of some person or class of persons as individuals, the legislative body declares its opinion that the risk involved therein is unreasonable.

The *Dunlap* court's use of the word "unreasonably", coupled with its reliance on the Restatement, demonstrates that court's recognition of an ordinary negligence standard for negligence *per se.* In any event, gross negligence is not the standard.

■ To maintain its *per se* claim, RTC must have alleged that: 1) the D & O defendants violated a statute, regulation or ordinance; 2) the violation proximately caused the alleged injuries; 3) RTC is a member of the class intended to be protected by the law; and, 4) the law was designed to prevent the type of harm RTC suffered. *Lyons v. Nasby,* 770 P.2d 1250, 1257 (Colo.1989). RTC has done so.

■ The D & O defendants alternatively argue that the negligence *per se* claim should be dismissed because the applicable regulations were enacted to secure the rights of the public at large, not citizens in their individual capacity. This argument lacks merit because the regulations relied on by the RTC, 12 C.F.R. § 545.32, § 563.17–1, § 563.41 and Memorandum R41–b, were not promulgated *exclusively* to secure the rights to the public at large. In *Dunlap* court stated that if the *exclusive* purpose of a legislative enactment is to secure rights to the public at large, not citizens in their individual capacity, no basis exists for negligence *per se* claim (emphasis added). *Dunlap,* 799 P.2d at 417–18.

However, as I noted in *F.D.I.C. v. Isham,* 782 F.Supp. 524, 531 (D.Colo.1992), FDIC regulations were designed "to protect depositors, the insurance fund, and the public." Thus, the regulations at issue here were not promulgated exclusively for the public's interest.

■ Moreover, negligence *per se* is a cognizable claim under federal common law. *See Resolution Trust Corp. v. Hess,* 820 F.Supp. 1359 (D.Utah 1993). In *Hess,* the court recognized a negligence *per se* claim based on the violation of federal regulations of the Home Owners' Loan Act, 12 U.S.C. § 1461, *et seq. Hess,* 820 F.Supp. at 1369; *See also Federal Sav. and Loan Ins. Corp. v. Musacchio,* 695 F.Supp. at 1064–65 (recognizing FSLIC's negligence *per se* claim based on HOLA regulation violations). Therefore, even if the RTC's negligence *per se* claims were precluded under Colorado law, they are recognized under the federal common law and, thus, preserved here under § 1821(k)'s savings clause. *See F.D.I.C. v. McSweeney,* 976 F.2d at 538 n. 7.

### 4.

As to Latcham's motion to dismiss RTC's ninth claim for relief, breach of fiduciary duty of loyalty, he provides no authority to distinguish this claim from a claim for breach of the fiduciary duty of care. Accordingly, his motion is denied.

Latcham and Grow also move to dismiss the tenth claim for relief for negligence regarding the asset protection services. Because I conclude that the D & O defendants can be found liable for negligence under Colorado law, their motion to dismiss this claim is also denied.

### II.

■ Motions to strike are generally disfavored, but are within the district court's sound discretion. *F.D.I.C. v. Isham,* 782 F.Supp. 524 (D.Colo.1992). Rule 12(f) pro-

vides for striking affirmative defenses that are insufficient. Fed.R.Civ.P. 12(f). An affirmative defense is insufficient if, as a matter of law, the defense cannot succeed under any circumstance. Id. The defenses attacked by RTC's motion may be generically categorized as 1) implicating RTC's conduct, 2) statutes of limitations and, 3) indemnification.

1.

■ RTC argues that the defendants cannot maintain defenses implicating the conduct of the RTC or other federal regulatory agencies which reduces or negates defendants' liability for otherwise wrongful acts. I agree.

Here, RTC moves to strike many of the identical defenses stricken in *F.D.I.C. v. Isham*. *Isham* is dispositive. There I held that the affirmative defenses of contributory and comparative negligence, failure to mitigate, waiver, estoppel, ratification, consent, acquiescence, reliance on banking regulators, and assumption of risk were stricken because they placed the Federal Deposit Insurance Corporation's (FDIC) conduct at issue. *Id.* at 530. As a matter of law, the defense of laches was also stricken. *Id.* at 532. Lack of causation was stricken to the extent it placed the FDIC's conduct at issue. *Id.*

The FDIC's insulation from affirmative defenses which places its conduct at issue was premised on several considerations. The FDIC's conduct in fulfilling its mandate involves discretionary decisions that should not be subjected to judicial second guessing. *Id.* at 532. The FDIC owes no duty to the officers and directors of the failed institution (no duty rule). *Id.* The banking laws further the public good, and seek to minimize loss to the insurance fund. *See generally Id.* at 532 (quoting *Federal Sav. and Loan Ins. Corp. v. Burdette*, 718 F.Supp. 649, 664 (E.D.Tenn.1989)); *Federal Deposit Ins. Corp. v. Bank of Boulder*, 911 F.2d 1466, 1474 (10th Cir.1990), *cert. denied*, 499 U.S. 904, 111 S.Ct. 1103, 113 L.Ed.2d 213 (1991).

The rule in *Isham* paints a bright line that maintains the focus on the persons whose alleged wrongdoing brought about the insolvency in the first instance. *Isham*, 782 F.Supp. at 532. The public policy underlying *Isham* is equally applicable to the RTC. *See* 12 U.S.C. § 1441a(b)(4). I decline to reconsider my holding in *Isham* in light of *F.D.I.C. v. Niblo*, 821 F.Supp. 441 (N.D.Tex.1993). *Niblo* applied Texas law in determining the sufficiency of certain affirmative defenses and, in any event, with respect, I am not persuaded by its rationale. I will grant the RTC's request to strike the D & O defendants' affirmative defenses of contributory and comparative negligence, failure to mitigate, waiver, estoppel, ratification, consent, acquiescence, reliance on banking regulators, assumption of risk, laches, unclean hands, lack of causation, intervening and superseding causes, and reliance to the extent that these defenses implicate the conduct of the RTC or other federal regulatory agencies. However, as in *Isham*, defendants are free to contest that their acts of commission or omission, if any, did not proximately cause RTC's damages.

■ *Isham* is not dispositive, however, as to Engel & Rudman's defenses implicating RTC's conduct. First, Engel & Rudman are third party professionals not alleged to have had control, oversight authority, or responsibility over the lending practices giving rise to this action. Second, my review of the pleadings and papers filed by the parties reveal no allegations that Engel & Rudman were "persons whose alleged wrongdoing brought about an insolvency in the first instance." *Isham*, 782 F.Supp. at 532. Rather, RTC bases its claims against Engel & Rudman on the legal services Engel & Rudman provided in connection with the D & O defendants' alleged fraudulent transfers. Third, the public policy considerations underlying the rule is *Isham* as they relate to Engel & Rudman may be attenuated and should be reviewed in light of Engel & Rudman's distinct status here.

RTC moves to strike Engel and Rudman's affirmative defenses of estoppel, waiver, laches, and failure to mitigate damages. With regard to estoppel, waiver, and laches, questioning at oral argument revealed that Engel and Rudman focus upon the conduct of the RTC in its various capacities and other bank-

ing regulators. As to failure to mitigate damages, Engel and Rudman appears to expand its focus to the conduct of the RTC in its corporate capacity in the prosecution of this action.

Engel and Rudman rely upon *Resolution Trust Corp. v. Holland & Knight*, 832 F.Supp. 1532 (S.D.Fla.1993). There the district court concluded that public policy considerations are irrelevant to actions involving third party professionals and should not bar third party professionals from asserting affirmative defenses against the RTC. *Id.* at 1540. That court recognized the division of authority on this issue. *Id.* at 1537. *See, e.g., F.D.I.C. v. Ernst & Whinney*, No. 3–87–0364, 1992 WL 535605 (E.D.Tenn. May, 1992) (not allowed as to accountants); *Federal Deposit Ins. Corp. v. Baker*, 739 F.Supp. 1401 (C.D.Cal.1990) (not allowed as to appraisers); *contra Federal Deposit Ins. Corp. v. Cherry, Bekaert & Holland*, 742 F.Supp. 612 (M.D.Fla.1990) (allowed as to accountants); *Federal Deposit Ins. Corp. v. Jones, Day, Reavis & Pogue*, No. A90–CA–925 (W.D.Tex. 1992) (allowed as to attorneys). *Holland* distinguished officers and directors of a failed institution from third party professionals, reasoning that the rationale for the "no duty rule" has no application to third party professionals having no control, oversight function, or responsibilities over the lending practices giving rise to insolvency. *Id. Holland* further reasoned that the FDIC acts as a private party in the collection of debts and, thus, does not need the special protection afforded this agency in the takeover of a failed institution. *Id.* at 1538. I respectfully disagree with this reasoning under the circumstances of this case.

With the exception of Engel and Rudman's focus on the RTC's own conduct in the prosecution of this action, Engel and Rudman clearly seek to impute wrong doing by RTC, acting other than in its corporate capacity, on other banking regulators to RTC/corporate. The burden of loss for Engel and Rudman's alleged wrongdoing in facilitating fraudulent transfers could thereby be shifted to the public, but the public was in no position to prevent or mitigate against such loss. *See In*

*Re Sunrise Securities Litigation*, 818 F.Supp. 830, 843 (E.D.Pa.1993).

Furthermore, Engel and Rudman's status as third party professionals does not abrogate or detract from FIRREA'S broad grant of discretion to the RTC to perform its liquidation duties and functions. *Isham*, 782 F.Supp. at 532; *Federal Deposit Insurance Corp. v. Crosby*, 774 F.Supp. 584, 586 (W.D.Wash.1991). Consequently, the "no duty rule" rationale remains viable as to third party professionals. Moreover, here, as in *Isham*, such regulatory agency conduct in fulfilling FIRREA's mandate involves the exercise of discretion that should not be subjected to judicial second guessing.

Most importantly, FIRREA's guiding light must be to further the goal of preserving and strengthening the nation's banking system and the fund insuring bank deposits. Here, focus on the conduct of FHLBB, OTS, RTC/conservator, RTC/receiver, or RTC/corporate cannot be said to advance this overriding goal.

A number of defendants have argued vociferously that RTC is running amuck, wasting vast sums of public monies. This broad indictment, however well founded it may be, is simply misdirected and should be addressed by the executive and legislative branches of government.

Under the specific circumstances of this case, and having reviewed the countervailing considerations and authority, I conclude that the rule of *Isham* should be extended to Engel and Rudman. Their affirmative defenses will therefore be stricken. As with the other D & O defendants, however, Engel and Rudman may present evidence that their alleged wrongdoing did not proximately cause RTC's damages. *See FDIC For and on Behalf of Heritage Bank and Trust v. Lowe*, 809 F.Supp. 856, 859 (D.Utah 1992).

2.

The RTC next contends that defendants' statutes of limitations affirmative defenses should be stricken as to its ninth (breach of fiduciary duty of care regarding Engel & Rudman legal services), tenth (negligence regarding Engel & Rudman legal services), eleventh, twelfth, thirteenth, fourteenth, sev-

enteenth, eighteenth, twenty-third, twenty-fourth, twenty-fifth, and twenty-sixth claims (fraudulent conveyances claims) because these defenses cannot succeed under any circumstances under FIRREA. I agree.

■ The FIRREA statute of limitations for tort actions shall be the longer of the applicable state statute of limitations or a three-year period beginning on the date the claim accrues. *12 U.S.C. § 1821(d)(14)(A)(ii).* This limitation period does not begin to run until the RTC is appointed as conservator or receiver or the date on which the cause of action accrued, whichever is later. 12 U.S.C. § 1821(d)(14)(B). FIRREA's limitation period applies retroactively so long as retroactive application does not revive a stale claim. *Resolution Trust Corp. v. Greenwood,* 798 F.Supp. 1391, 1397 (D.Minn.1992). A stale claim is one which was already barred as untimely when the institution went into receivership or conservatorship. *Id.*

Consideration of the statute of limitations affirmative defense requires a two-step inquiry. *Federal Deposit Ins. Corp. v. Howse,* 736 F.Supp. 1437, 1440 (S.D.Tex.1990). First, I must determine whether the RTC's claims were viable under state law when Capitol Federal went into conservatorship. Second, if these claims were viable when the RTC was appointed conservator on May 4, 1990, I must decide whether the RTC filed suit within the FIRREA guidelines. *Id.*

As of July 1, 1986, the Colorado statute of limitations for negligence actions is two years. § 13–80–102(1)(a), 6A C.R.S. (1987). The applicable Colorado limitations period for breach of fiduciary duty, § 13–80–101(1)(f), 6A C.R.S. (1987), and fraudulent transfers, § 13–80–101(1)(c), 6A C.R.S. (1987), is three years.

■ In considering the first prong of the two-step inquiry, it is undisputed that the claims at issue arose, at the earliest, in 1989. Thus, they were viable when Capitol Federal was placed in conservatorship on May 4, 1990. Turning to the inquiry's second step, this action was filed on May 3, 1993 which is within FIRREA's § 1821(d)(14) three year limitations period. Hence, it was timely.

Because these claims were viable when Capitol Federal went into conservatorship and RTC filed its action timely, there are no conceivable facts under which the statutes of limitations affirmative defenses at issue here can be sustained. Accordingly, I grant RTC's motion to strike defendants' statute of limitations affirmative defenses as to its ninth, tenth, eleventh, twelfth, thirteenth, fourteenth, seventeenth, eighteenth, twenty-third, twenty-fourth, twenty-fifth, and twenty-sixth claims.

■ Mrs. Marberry contends that the FIRREA tolling provisions are inapplicable to her because she is not an institution affiliate as defined in FIRREA. I agree that Mrs. Marberry is not an institution-affiliate, but disagree that FIRREA's provisions are inapplicable to her. Section 1821(d)(17)(B) of FIRREA provides that the RTC, in avoiding a transfer, can recover for the insured depository institution's benefit, the property transferred or its value, from *the initial transferee* of the institution-affiliated party's transfer (emphasis added). 12 U.S.C. § 1821(d)(17)(B) (1993 Supp.). Here, Mrs. Marberry is an alleged initial fraudulent transferee of her husband, Mr. Marberry, an "institution-affiliated party". Therefore, FIRREA is applicable to Mrs. Marberry. Accordingly, her statute of limitations defenses are also insufficient as a matter of law.

**3.**

■ Finally, RTC moves to strike defendants Grow, Latcham and Shearon's affirmative defenses of indemnification. The defendants raise this defense based on 12 C.F.R. § 545.121. The RTC argues that: 1) 12 C.F.R. § 545.121 read with 12 U.S.C. § 1821(k) precludes indemnification as an affirmative defense; 2) public policy supports the striking of this defense; 3) indemnification can only be asserted against Capitol Federal or RTC in its receiver capacity; and, 4) the alleged right to indemnification constitutes a claim which must first be presented for an administrative review pursuant to 12 U.S.C. § 1821(d)(13)(D) before jurisdiction to consider right to indemnification may attach here.

It is undisputed that these defendants have not submitted administrative claims pursuant to this statute. At oral argument it was further conceded that it cannot now be shown that this claims process is futile. Because I agree with RTC's fourth argument, the other issues are not ripe for resolution. Thus, I will not address them and will strike this defense without prejudice.

12 U.S.C. § 1821(d)(13)(D) provides:

Except as otherwise provided in this subsection, no court shall have jurisdiction over—

i) any *claim or action* for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver,

. . .

ii) any *claim* relating to any act or omission of such institution or the Corporation as receiver. (emphasis added)

The courts are divided as to whether "claim" and "action" as applied in this statute applies to affirmative defenses. *Resolution Trust Corp. v. Conner*, 817 F.Supp. 98 (W.D.Okla.1993) ("claim" and "action" as used in 12 U.S.C. § 1821(d)(13)(D) does not encompass affirmative defenses); *Contra Federal Sav. and Loan Ins. Corp. v. McGinnis, Juban, Bevan, Mullins & Patterson, P.C.*, 808 F.Supp. 1263, 1280 (E.D.La.1992) ("claim" and "action" as applied in 12 U.S.C. § 1821(d)(13)(D) includes defenses).

In the context of this case, I conclude that "claim" and "action" as used in 12 U.S.C. § 1821(d)(13)(D) encompasses the "affirmative defense" of indemnification. Thus, the administrative procedures requirement in § 1821(d)(13)(D) is applicable here and jurisdiction has not attached to consider further the question of indemnification.

Accordingly, IT IS ORDERED that:

1) The D & O defendants' motions to dismiss RTC's claims are DENIED;

2) RTC's motion to strike defendants' affirmative defenses of estoppel, waiver, contributory and comparative negligence, laches, assumption of risk, ratification, consent, acquiescence, failure to mitigate damages, lack of causation, unclean hands, intervening and superseding causes and reliance is GRANTED to the extent that these defenses implicate the conduct of RTC or other federal regulatory agencies;

3) RTC's motion to strike Mrs. Marberry's affirmative defenses is GRANTED;

4) RTC's motion to strike defendants' statutes of limitations affirmative defenses as applied to its ninth, tenth, eleventh, twelfth, thirteenth, fourteenth, seventeenth, eighteenth, twenty-third, twenty-fourth, twenty-fifth, and twenty-sixth claims is GRANTED;

5) RTC's motion to strike Grow's, Latcham's and Shearon's affirmative defenses of indemnification is GRANTED without prejudice;

6) RTC's motion to strike Engel & Rudman's affirmative defenses is GRANTED.